J-A09036-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RYAN MATTHEW FLECK, | |
| Appellant | No. 227 MDA 2015 |

Appeal from the Judgment of Sentence September 16, 2014
in the Court of Common Pleas of Centre County
Criminal Division at No.: CP-14-CR-0000990-2012

BEFORE:  FORD ELLIOTT, P.J.E., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                          **FILED JULY 19, 2016**

Appellant, Ryan Matthew Fleck, appeals from the judgment of sentence imposed following his non-jury trial conviction of two counts of driving under the influence (DUI), impaired ability; one count of careless driving; one count of DUI, blood alcohol content (BAC) at least .08% but less than .10%; and one count of general DUI.[1]  He challenges the denial of a suppression motion, the admissibility of retrograde extrapolation evidence, preclusion of expert testimony, the denial of his motion for post-trial relief challenging the weight of the evidence, and the trial court's denial of his motion to dismiss for violating his speedy trial rights.  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. §§ 3802(d)(2), 3802(d)(3), 3714(a), 3802(a)(2), 3802(a)(1) respectively.

We take the facts and procedural history in this matter from our review of the certified record. On March 18, 2012, at approximately 3:30 p.m., Patton Township Police and the Pennsylvania State Police responded to 911 calls regarding Appellant's unsafe and erratic driving. Both calls described Appellant's vehicle as drifting between traffic, swerving into traffic lanes from exit ramps, and bizarre behavior by Appellant such as pounding on the steering wheel, flailing his arm out the window, and yelling. One caller reported that Appellant got out of his vehicle in the middle of an entrance ramp, ran around it, and then got back in and merged back into traffic.

Patton Township Police Officers Tyler Jolley and Thomas Snyder responded to the 911 reports, and saw Appellant pull his vehicle into a fire station parking lot where they detained him. Officer Jolley spoke with one of the witnesses who had followed Appellant's car from the highway to the parking lot. While interacting with Appellant, Officer Snyder noticed his droopy eyes, an odor of alcohol, and that he had difficulty responding to their questions. When asked to step out of the car Appellant stated that he should not be driving, and admitted to drinking alcohol the evening before. (*See* Suppression Court Opinion, 03/27/13, at 1-2).

Pennsylvania State Police Trooper Michael Brown arrived on scene and spoke with Officers Snyder and Jolley and then approached Appellant. Trooper Brown, who believed that, based on his observations and interactions, Appellant could not safely operate his vehicle, and that

Appellant might be under the influence of some substance besides alcohol, called a Drug Recognition Expert (DRE), Corporal Derek Pacella, to the scene to assist. Corporal Pacella administered a DRE exam, during which Appellant offered that he was under treatment for narcolepsy and he took medication, specifically Xyrem, Ritalin, and Celexa earlier that day. Appellant also admitted that he consumed alcohol the night before and his last drink was at 1:00 a.m. Appellant conceded that he knew that he should not be driving after taking his prescription Xyrem. Appellant consented to a legal blood draw at 6:30 p.m., which resulted in a BAC of .048%. (**See id.** at 2-3).

On May 1, 2012, Appellant was charged by criminal complaint. After a hearing on defense omnibus pre-trial motions on February 25, 2013, the suppression judge denied Appellant's motion to suppress the traffic stop. Several discovery motions, motions to dismiss, and defense continuances arose prior to this case being scheduled to be tried on December 2-3, 2013. At Appellant's request, the trial was continued until February 3, 2014. Several more defense discovery motions and motions to continue ensued.

A jury was selected on February 3, 2014, and trial was scheduled to occur on March 25-26, 2014. On March 14, 2014, the Commonwealth filed a motion to amend the information by adding two counts. At Appellant's request, the trial court moved the case from the February term, past the April term, and scheduled it for the June term. A jury was selected on June 2, 2014, with trial scheduled for July 14-15, 2014. Appellant filed a motion to dismiss on July 11, 2014, arguing that his speedy trial rights under

Pennsylvania Rule of Criminal Procedure Rule 600 and his federal speedy trial rights had been violated. The court denied Appellant's motion to dismiss prior to sentencing on September 16, 2014.

On July 14, 2014, Appellant waived his right to a jury trial and proceeded to non-jury trial. (*See* N.T. Trial, 07/14/14, at 5). At trial, both the Commonwealth and Appellant presented expert witnesses, including the Commonwealth's expert Dr. Edward Barbieri who, using relation-back extrapolation, opined about Appellant's BAC at the time of the incident. The trial court did not permit Appellant to cross-examine Dr. Barbieri about narcolepsy because it reasoned he was not a medical doctor and was not qualified to opine about a medical condition or its symptoms. Appellant presented Dr. Robert J. Belloto, Jr. as an expert witness. The court qualified Dr. Belloto as an expert in pharmacy and clinical pharmacy, but did not permit him to testify as an expert in toxicology, statistics or chemistry. The court also reaffirmed the suppression court's order precluding Dr. Belloto's supplemental report because Appellant introduced it well after the deadline for submitting supplemental reports.

At the conclusion of trial, the court found Appellant guilty of all charges previously noted. Appellant was sentenced to intermediate punishment for a period of five years including 150 days on the in-home detention program, followed by the remainder of the five years under the supervision of the Centre County Probation and Parole Department. Appellant filed a post-sentence motion challenging the weight of the

evidence supporting the conviction and arguing that there were numerous inconsistencies in the record. The trial court denied the motion on January 9, 2015, finding that there were no inconsistencies of consequence and Appellant's guilt was clear. This timely appeal followed.[2]

Appellant raises six questions on appeal:

1. Did the trial court err in denying [Appellant's] Motion for Suppression of Evidence as the only observations Officer Snyder made of [Appellant] was that of a law abiding citizen and the only authority to make the stop came from a lay witness or informant, not from an officer who had specific and articulable facts sufficient to justify the traffic stop[?]

2. Did the trial court abuse its discretion in allowing the Commonwealth to present evidence concerning retrograde extrapolation as the Commonwealth's expert did not have the requisite information to provide a reliable scientific opinion on this issue and the expert's testimony amounted to mere speculation and conjecture[?]

3. Did the trial court err in precluding [d]efense counsel from cross-examining the Commonwealth's expert as to his knowledge of narcolepsy and its symptoms as this was relevant impeachment evidence that would have shown that the symptoms of narcolepsy ([Appellant's] disease state) were consistent with the Commonwealth witnesses' observations that proved his impairment[?]

4. Did the trial court err in precluding the [d]efense expert from testifying to his experience with individuals that have had seizures; not qualifying him as an expert in the areas of toxicology, statistics and chemistry; and precluding his expert reports[?]

_____

[2] Pursuant to the trial court's order, Appellant filed his concise statement of errors complained of on appeal on March 6, 2015. *See* Pa.R.A.P. 1925(b). The trial court entered its opinion on May 15, 2015. *See* Pa.R.A.P. 1925(a).

5. Did the trial court abuse its discretion in denying counsel's [p]ost-[s]entence [m]otion where the verdict was against the weight of the evidence as the Commonwealth witnesses[] relied on guesswork and speculation to reach their ultimate conclusions that [Appellant's] BAC was above a .08; he was impaired by alcohol, his medication and the combination of both; and many Commonwealth witnesses reached the opposite conclusions[?]

6. Did the trial court err in denying [Appellant's] [m]otion to [d]ismiss for [v]iolation of Rule 600 and his [f]ederal [s]peedy [t]rial rights as he was not brought to trial within 365 days and the Commonwealth lacked due diligence resulting in anxiety and concern for [Appellant][?]

(Appellant's Brief, at 1-2).

In his first issue, Appellant argues that the suppression court erred in denying his motion to suppress. (*See id.* at 41-47). Specifically, he claims that all evidence from his traffic stop should be suppressed because the Commonwealth did not establish that any particular police officer had specific and articulable facts sufficient to justify and authorize the stop. (*See id.* at 45-46). We disagree.

> Pursuant to our deferent standard of review of a trial court's suppression ruling, we must determine:
>
> > [W]hether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Cruz*, 71 A.3d 998, 1002-03 (Pa. Super. 2013), *appeal denied*, 81 A.3d 75 (Pa. 2013) (citations omitted).

Section 6308(b) of the Vehicle Code provides:

**(b) Authority of police officer.**—Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. § 6308(b).

"The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances." *Commonwealth v. Holmes*, 14 A.3d 89, 96 (Pa. 2011) (citations omitted). "[I]n order to establish reasonable suspicion, an officer must be able to point to specific and articulable facts which led him to reasonably suspect a violation of the Motor Vehicle Code[.]" *Id.* (emphasis omitted).

"To have reasonable suspicion, police officers need not personally observe the illegal or suspicious conduct, but may rely upon the information of third parties, including 'tips' from citizens." *Commonwealth v. Barber*, 889 A.2d 587, 593 (Pa. Super. 2005) (citations omitted).

Here, two citizen informants called 911 to report that Appellant was driving erratically.[3] After the report, the Patton Township Police were called in to assist the Pennsylvania State Police in locating Appellant's vehicle. (***See*** N.T. Preliminary Hearing, 5/30/12, at 14). Patton Township Police Officer Snyder testified that, after observing the vehicle in a fire station parking lot, he pulled to the side of it and flagged the driver down and made contact with Appellant. (***See id.*** at 14-15). Officer Snyder explained to Appellant that he was stopping him because he had received complaints of a traffic violation. (***See id.*** at 15). He briefly questioned Appellant and then turned him over to Pennsylvania State Police Trooper Brown who had arrived on scene, explaining his observations to him. (***See id.*** at 17).

We conclude that the suppression court's holding—that the police had reasonable suspicion to detain Appellant—was supported by the factual record, which indicated that the township police officers received information from dispatch that the Pennsylvania State Police were seeking Appellant's vehicle to investigate identified citizen reports of motor vehicle code violations. (***See*** Suppression Ct. Op., 03/27/13, at 4-5); ***Holmes***, ***supra*** at 96; ***Barber***, ***supra*** at 593. Accordingly, the suppression court properly

---

[3] Appellant concedes "[T]he [identified citizen] caller's degree of accountability and her firsthand report of traffic violations were sufficient to establish a reasonable suspicion to conduct an investigative detention of [Appellant]." (Appellant's Brief, at 45).

denied the motion to suppress. *See Cruz*, *supra* at 1002-03. Appellant's first issue does not merit relief.

In his second issue, Appellant claims that the trial court erred by admitting evidence of retrograde extrapolation by Dr. Barbieri because he did not "have the requisite information to provide a reliable scientific opinion on this issue" and "[t]herefore, said testimony presented before the trial court was speculation and conjecture." (Appellant's Brief, at 51; *see id.* at 47-51). We disagree.

Preliminarily we note that Appellant failed to object at trial to the admissibility of Dr. Barbieri's testimony concerning retrograde extrapolation.[4] *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Accordingly, his challenge is waived.

Moreover, it would not merit relief. Our standard of review concerning admissibility of evidence is well settled.

> [t]he admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality,

---

[4] Appellant's only objection to Dr. Barbieri's testimony concerned admissibility of any alcohol result where he argued, the Commonwealth did not establish that the blood draw was done within two hours. (*See* N.T. Trial, 7/14/14, at 268). The court overruled his objection. (*See id.* at 269). Appellant has not raised the issue of the two-hour rule in this appeal, and therefore has waived his challenge.

prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

***Commonwealth v. Pugh***, 101 A.3d 820, 822 (Pa. Super. 2014) (*en banc*),

*appeal denied*, 117 A.3d 296 (Pa. 2015) (citation omitted).

"Admissibility of expert testimony on scientific knowledge is governed

by Pennsylvania Rule of Evidence 702[.]" ***Id.***

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>> (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
>>
>> (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
>>
>> (c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702(a)-(c).

"Relating back refers to a scientific method by which a person's BAC at

the time of driving is extrapolated from the results of chemical testing done

at a later time." ***Commonwealth v. Freidl***, 834 A.2d 638, 645 n.2 (Pa.

Super. 2003) (citation omitted).

Here, during trial, Dr. Barbieri testified that Appellant's BAC was 0.048

percent at 6:30 p.m.[5]  (***See*** N.T. Trial, 7/14/14, at 270).  He opined that

Appellant had a 0.090 percent BAC at the time of the incident, 3:30 p.m.

---

[5] Dr. Barbieri was qualified as an expert in forensic toxicology and pharmacology without objection.  (***See*** N.T. Trial, 7/14/14, at 260).

(*See id.* at 273). He formed this opinion utilizing the scientific method of relating back, also known as retrograde calculation, assuming that Appellant did not consume any more alcohol, that he had completely absorbed all of the alcohol prior to the time of the incident, and that he had an average metabolic rate. (*See id.* at 270-71).

Appellant primarily relies on legal authority from Texas, which is not binding on this jurisdiction, in support of his argument questioning the admissibility of relation back evidence. (*See* Appellant's Brief, at 48-50). Under Pennsylvania law, however, relation back methodology is generally accepted in the field of forensic toxicology. *See Freidl*, *supra* at 645 n.2. Therefore, we conclude that because Dr. Barbieri was qualified as an expert, because his opinion would be helpful to determine whether Appellant was under the influence of alcohol while the incident occurred, and because relation back is an accepted scientific method, the trial court did not abuse its discretion in permitting this testimony. *See Pugh*, *supra* at 822; Pa.R.E. 702. Accordingly Appellant's second issue would not merit relief.

In his third issue, Appellant argues that the trial court erred when it precluded him from cross-examining Dr. Barbieri about his knowledge of narcolepsy and its symptoms. (*See* Appellant's Brief, at 51-53). Specifically, he argues that such preclusion resulted in his not being permitted to fully present his theory of the case—that his narcolepsy was the sole basis for what the eye-witnesses had perceived. (*See id.* at 53). We disagree.

A challenge to the extent of cross-examination is governed by the following principles:

> [W]e note that in cross-examining a witness, an attorney is entitled to question the witness about subjects raised during direct examination as well as any facts tending to refute inferences arising from matters raised during direct testimony. . . . Similarly, an attorney may discredit a witness by cross-examining the witness about omissions or acts that are inconsistent with his testimony . . . . However, the scope and limits of cross-examination is [sic] vested in the trial court's discretion and that discretion will not be reversed unless the trial court has clearly abused its discretion or made an error of law.

*Commonwealth v. Kimbrough*, 872 A.2d 1244, 1261-62 (Pa. Super. 2005), *appeal denied*, 887 A.2d 1240 (Pa. 2005) (citation omitted); *see* Pa.R.E. 611(b) ("Cross-examination of a witness . . . should be limited to the subject matter of the direct examination and matters affecting credibility, however, the court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.").

Here, we conclude that the trial court did not abuse its discretion when it precluded Appellant from cross-examining Dr. Barbieri about the symptoms of narcolepsy, where narcolepsy was not raised during his direct examination and where Dr. Barbieri was not qualified as a medical doctor who could testify about the symptoms of a disease. *See Kimbrough*, *supra* at 1261-62. We note that Appellant was not precluded from introducing his own expert witness to testify about narcolepsy; however, the court was well within its discretion in precluding Appellant from cross-examination of Dr. Barbieri regarding narcolepsy. *See Commonwealth v. Lobel*, 440 A.2d 602, 605 (Pa. Super. 1982) ("When the obvious purpose of

cross-examination is to develop defendant's own case, a ruling by the trial judge to limit cross-examination is not an abuse of discretion."); ***Kimbrough***, ***supra*** at 1261-62. Accordingly, Appellant's third issue does not merit relief.

In his fourth issue, Appellant argues that the trial court erred in not finding his expert, Dr. Belloto, qualified as an expert in the areas of toxicology, statistics, and chemistry; and precluding his expert reports. (***See*** Appellant's Brief, at 54-57). Specifically, he argues that the reports should have been admitted because the Commonwealth failed to show the opinions contained within were not generally accepted in the scientific community, and that Dr. Belloto should have been qualified as an expert in pharmacology and toxicology because he is a recognized figure in these fields and is "a well-accomplished professor, author, and thinker." (***Id.*** at 56).

Preliminarily we note that although Appellant's statement of questions presented also challenges the court's preclusion of Dr. Belloto from testifying about his experience with individuals with seizures, and his qualification as an expert in statistics or chemistry, he has failed to address those arguments and therefore they are waived. (***See*** Appellant's Brief, at 54-57); Pa.R.A.P. 2101, 2119(a)-(c). Furthermore, to the extent that Appellant challenges Dr. Belloto not being qualified as an expert in pharmacology in his brief, it is waived for failure to include it in his statement of questions. ***See*** Pa.R.A.P. 2116(a). We also note that Appellant has failed to develop

any argument supported by any legal authority that the court abused its discretion in precluding Dr. Belloto's supplemental report. Accordingly, he has waived his challenge. ***See*** Pa.R.A.P. 2101, 2119(a)-(c).

"Determining whether a witness may testify as an expert is a matter within the sound discretion of the trial court, whose decision will only be reversed for a clear abuse of discretion." ***Yacoub v. Lehigh Valley Med. Assoc., P.C.***, 805 A.2d 579, 591 (Pa. Super. 2002), *appeal denied*, 825 A.2d 639 (Pa. 2003).

> An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. In addition, [t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

***Jacobs v. Chatwani***, 922 A.2d 950, 960 (Pa. Super. 2007), *appeal denied*, 938 A.2d 1053 (Pa. 2007) (citation omitted).

"If a witness possesses neither experience nor education in the subject matter under investigation, the witness should be found not to qualify as an expert." ***Yacoub***, ***supra*** at 591(citation omitted).

Here, the trial court has explained that it did not accept Dr. Belloto as an expert in toxicology because "there was not an adequate basis establishing his credentials[.]" (Trial Ct. Op., 5/15/15, at 8). At trial, Dr. Belloto testified that although his main source of income was as a practicing pharmacist, he did consulting on the side for forensic toxicology. (***See*** N.T. Trial 7/15/14, at 34). He also testified that he has been involved with

authoring a chapter in a book on forensic toxicology of urine and blood levels. (*See id.* at 38). Dr. Belloto admitted that he had not taught forensic toxicology or taken any classes in forensic toxicology, and that he is not in any toxicology professional associations. (*See id.* at 59-61, 71).

After a careful review of the certified record, we conclude that the trial court did not abuse its discretion in not accepting Dr. Belloto as an expert in forensic toxicology where he was not educated or otherwise qualified by experience in that specialty. *See Yacoub*, *supra* at 591; *Jacobs*, *supra* at 960. Appellant's fourth issue does not merit relief.

In his fifth issue, Appellant argues that the trial court abused its discretion in denying his motion for a new trial because the verdict was against the weight of the evidence. (*See* Appellant's Brief, at 58–62). Specifically he contests the use of retrograde extrapolation and argues: "[a]s can be seen from the Commonwealth's own witnesses, what was perceived to prove [Appellant's] impairment was just as consistent with [Appellant's] disease state." (*Id.* at 62; *see id.* at 59). Appellant's issue lacks merit.

Our standard of review of a challenge to the weight of the evidence is well-settled:

> A verdict is not contrary to the weight of the evidence because of a conflict in testimony or because the reviewing court on the same facts might have arrived at a different conclusion than the fact[-]finder. Rather, a new trial is warranted only when the jury's verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. Where, as here, the judge who presided at trial ruled on the

weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

One of the least assailable reasons for granting or denying a new trial is the lower court's determination that the verdict was or was not against the weight of the evidence and that new process was or was not dictated by the interests of justice. Thus, only where the facts and inferences disclose a **palpable abuse of discretion** will the denial of a motion for a new trial based on the weight of the evidence be upset on appeal.

*Commonwealth v. Morales*, 91 A.3d 80, 91-92 (Pa. 2014), *cert. denied*, 135 S.Ct. 1548 (2015) (citations omitted; emphasis in original).

Here, Appellant has not argued or demonstrated that the trial court palpably abused its discretion when it denied his motion for a new trial on the basis of the weight of the evidence. He merely claims that the Commonwealth's witnesses' opinions were contradictory and did not consider his narcolepsy. (**See** Appellant's Brief, at 59-60). Therefore, Appellant has failed to advance an argument that invokes the appropriate standard of review. **See Morales**, **supra** at 91-92.

Moreover, our independent review of the record reveals that the trial court properly considered the issue as one of credibility of the witnesses, and determined that the guilty verdict imposed on all charges following the non-jury trial did not shock one's sense of justice where Appellant's guilt was clear. (**See** Trial Ct. Op., at 10). Therefore, we conclude that the trial court did not palpably abuse its discretion in deciding the weight of the evidence

issue. *See Morales*, *supra* at 91-92. Appellant's fifth issue does not merit relief.

In the first part of his sixth issue, Appellant argues that the trial court erred in denying his motion to dismiss for a Rule 600 speedy trial violation. (*See* Appellant's Brief, at 62-72). Specifically, he contends that, at most, 403 days of delay were attributable to defense continuances, and therefore, excluding that time, the time between when the Commonwealth filed the complaint and the commencement of trial exceeded the 365 day limit by thirty-four days.[6] (*See id.* at 68).

> In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.
>
> The proper scope of review . . . is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.
>
> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the

---

[6] Although Appellant contends that several time-periods for which he executed a Rule 600 waiver should not be excluded as defense delays, he has failed to develop an argument supported by legal authority that his waiver was invalid. *See* Pa.R.A.P. 2101, 2119(a)-(c).

protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters . . . , courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

***Commonwealth v. Watson***, 2016 WL 3036617, --- A.3d ---, at *2 (Pa. Super. May 26, 2016) (citation omitted).

The Rule mandates, *inter alia*, that a defendant must be tried on criminal charges no later than 365 days after the criminal complaint is filed. Pa.R.Crim.P. 600(A)(1)(3).[7]

This straightforward calculation is known as the mechanical run date. However, those periods of delay caused **by a defendant** are excluded from the computation of the length of time of any pretrial incarceration. Pa.R.Crim.P. 600(C). Following these exclusions, if any, we arrive at an adjusted run date by extending the mechanical run date to account for these exclusions. Any other delay that occurs, despite the

---

[7] We note that a new Rule 600 was adopted, effective July 1, 2013, "to reorganize and clarify the provisions of the rule in view of the long line of cases that have construed the rule." Pa.R.Crim.P. 600, Comment. However, because the criminal complaint in this case was filed prior to the new rule, we will apply the former version of Rule 600. ***Commonwealth v. Roles***, 116 A.3d 122, 125 n.4 (Pa. Super. 2015), *appeal denied*, 128 A.3d 220 (Pa. 2015).

> Commonwealth's due diligence, is deemed excusable and results in further adjustments to the effective run date. Pa.R.Crim.P. 600(G). . . .

*Commonwealth v. Dixon*, 2016 WL 3186853, --- A.3d ---, at *3 (Pa. Super. June 7, 2016) (most case citations omitted; footnote in original).

Here, the court found that 357 days would be assessed against the Commonwealth, which complied with Rule 600's requirements to bring a defendant to trial within 365 days of the filing of the criminal complaint. (*See* N.T. Sentencing, 9/16/14, at 2-3). Specifically, the court explained:

> The defense filed a motion alleging a violation of the Rule 600 that would be entitled Motion to Dismiss for Violation of Rule 600 and/or Federal Speedy Trial Rule. The [c]ourt has examined the [c]ourt file and all of the continuance forms contained therein and what we have determined through that examination is that 357 days would be assessed against the Commonwealth.
>
> Voir dire in the selection of jury . . . was conducted on June 2, 2014. The trial itself commenced on July 14[, 2014]. The time between July 2nd and July 14th cannot be attributed to the Commonwealth because that's the [c]ourt. The [c]ourt scheduled that trial.
>
> So as a result, the [c]ourt has determined that 357 days would be assessed against the Commonwealth, which is within the Rule 600 parameters, and, therefore, the Motion to Dismiss for Violation of Rule 600 and/or Federal Speedy Trial is hereby denied.

(*Id.*).

Appellant does not present any argument supported by legal authority or citation to the certified record that the trial court erred in its calculation or

abused its discretion in denying his motion to dismiss.[8]  He does not dispute the court's finding of 357 days against the Commonwealth.  Notably, a review of the calendar that Appellant attached to his brief in support of his Rule 600 motion suggests that 359 days should be counted against the Commonwealth, which would also not be a violation of Rule 600.  (**See** Brief in Support of Motion to Dismiss for Violation of Rule 600 and or Federal Speedy Trial, 8/08/14, at Exhibit A).

Therefore, viewing all evidence in the light most favorable to the Commonwealth, as prevailing party, we conclude that, where the trial court found trial commenced within 357 non-waived days of the filing of the criminal complaint, it properly denied Appellant's motion to dismiss.  **See Watson**, **supra** at \*2; **Dixon**, **supra** at \*3.  Appellant's challenge to denial of his Rule 600 motion to dismiss does not merit relief.

In the second part of his sixth and final issue, Appellant claims that the trial court erred in denying his motion to dismiss for a violation of his federal speedy trial rights.  (**See** Appellant's Brief, at 62-64, 72).  Specifically, he argues that he suffered prejudice, in the form of anxiety and concern, because of the unnecessary delay in the proceedings, and therefore

---

[8] We note that, aside from minor stylistic changes, Appellant simply copied the argument portion of his appellate brief from his brief in support of his motion to dismiss.  (**Compare** Brief in Support of Motion to Dismiss for Violation of Rule 600 and or Federal Speedy Trial, 8/08/14, at 13-22; **with** Appellant's Brief, at 62-72).

his motion to dismiss because of a violation of his sixth amendment right to a speedy trial should have been granted. (*See id.* at 72). We disagree.

> The standard we apply in determining if an Appellant's constitutional right to a speedy trial has been violated is the balancing test first articulated in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Under the *Barker* standard, we first examine the threshold question of whether "the delay itself is sufficient to trigger further inquiry." *Commonwealth v. Glover*, 500 Pa. 524, 458 A.2d 935, 937 (1983) (applying *Barker*). If the delay is sufficient to trigger further inquiry, we then "balance the length of the delay with the reason for the delay, the defendant's timely assertion of his right to a speedy trial, and any resulting prejudice to the interests protected by the right to a speedy trial." *Id.*

*Commonwealth v. Miskovitch*, 64 A.3d 672, 679 (Pa. Super. 2013), *appeal denied*, 78 A.3d 1090 (Pa. 2013).

"[T]he degree of actual prejudice that occurred, rather than the assumptions provided by our conclusion of presumptive prejudice, must be weighed against the reason for the delay in order to determine if Appellant's speedy trial rights have been violated." *Id.* at 679. "The interests protected by the Sixth Amendment are as follows: to prevent oppressive pre-trial incarceration; to minimize anxiety and concern of the accused; and to limit the possibility that the defense will be impaired." *Commonwealth v. Dehoniesto*, 624 A.2d 156, 159 (Pa. Super. 1993), *appeal denied*, 634 A.2d 217 (Pa. 1993) (citation omitted).

Here, the length of delay was 804 days, which is generally lengthy enough to require further inquiry. *See Miskovitch*, *supra* at 679 ("a delay of almost two years precipitated further inquiry") (citation omitted).

- 21 -

However, Appellant has failed to show any actual prejudice from this delay where he merely asserted that he suffered anxiety and concern. (**See** Appellant's Brief, at 72); **Dehoniesto**, **supra** at 160 (claim defendant "suffered anxiety because he faced a potential prison term and was unable to make employment and marriage plans . . . . establishes only minimal prejudice."). Accordingly, we conclude that the trial court did not abuse its discretion when it denied Appellant's motion to dismiss for a violation of his federal speedy trial rights. **See Miskovitch**, **supra** at 679. Appellant's final issue does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/19/2016