J-S73025-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARQUISE BARNETT | |
| Appellant | No. 345 WDA 2016 |

Appeal from the Judgment of Sentence January 25, 2016
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-CR-0001671-2015

BEFORE:  FORD ELLIOTT, P.J.E., LAZARUS, J., and JENKINS, J.

MEMORANDUM BY LAZARUS, J.:               **FILED NOVEMBER 4, 2016**

Marquise Barnett appeals from his judgment of sentence, entered in the Court of Common Pleas of Erie County, after a jury convicted him of possession of firearm prohibited[1] and firearms not to be carried without a license.[2]  After careful review, we affirm.

On May 22, 2014, Barnett was arrested for fleeing or attempting to elude an officer, accident involving damage to property, and various firearms charges in connection with his flight from officers attempting to effectuate a traffic stop.  Erie police officers had received information from a confidential informant (CI) that a Ford Econoline van, registration plate #JML4554, had

_____

[1] 18 Pa.C.S. § 6105(a)(1).

[2] 18 Pa.C.S. § 6106(a)(1).

been involved in a rash of shootings and may soon be involved in additional shootings. On September 19, 2014, Barnett filed an omnibus pre-trial motion to suppress evidence uncovered from the traffic stop. On November 14, 2014, the court denied Barnett's motion. On April 6, 2015, the day Barnett was called to trial, the Commonwealth obtained a forensic report that potentially linked the guns recovered from Barnett to a shooting. The Commonwealth requested that all the charges be *nolle prossed* in order to join the additional charges[3] resulting from the new information. The court granted the Commonwealth's request and Barnett was released from custody.

On April 15, 2015, the Commonwealth re-filed the firearm violation charges against Barnett and added additional charges related to an incident where shots were fired into a house located at 1861 Woodlawn Avenue. On October 26, 2015, Barnett filed a motion to dismiss the case for violation of his Rule 600 (speedy trial) rights. After a hearing, the Honorable Shad Connelly denied the motion on November 13, 2015.

On August 26, 2015, Barnett filed another pre-trial motion to suppress the investigatory traffic stop; the trial court denied the motion finding that the issues raised were collaterally estopped based on its prior suppression

---

[3] The Commonwealth added the charges of aggravated assault (2 counts), recklessly endangering another person (2 counts), and discharge of a firearm into an occupied structure.

order. A two-day jury trial was held before the Honorable William R. Cunningham on November 18-19, 2015. On November 19, 2015, Barnett was found guilty of the above-mentioned firearm offenses.[4] On January 25, 2016, Judge Cunningham sentenced Barnett to 42 to 84 months' incarceration for the firearms not to be carried without a license charge and a concurrent term of 5 years of probation for the possession of firearm prohibited charge.[5] Post-sentence motions were filed and denied on February 5, 2016. Barnett filed a timely notice of appeal on March 2, 2016, raising the following issues for our consideration:

> (1) Whether the suppression court err[ed] in finding the investigatory detention of [Barnett] was justified by reasonable suspicion where the police relied solely upon information from an informant who[se] reliability was not substantiated by any objective facts?[6]

_____

[4] The trial court granted Barnett's motions for judgment of acquittal regarding the additional charges involved in the Woodlawn Avenue house shooting.

[5] He was deemed not eligible under the Recidivism Risk Reduction Incentive (RRRI) Act, 61 Pa.C.S. § 4501-12.

[6] When reviewing an order denying a motion to suppress evidence, we must determine whether the trial court's factual findings are supported by the evidence of record. If the evidence supports the trial court's findings, we are bound by them and may reverse only if the legal conclusions drawn therefrom are erroneous. *Commonwealth v. Blair*, 860 A.2d 567, 571 (Pa. Super. 2004).

(2)     Whether the lower court err[ed] in failing to dismiss the charges where the Commonwealth violated [Barnett's] right to a speedy trial?[7]

(3)     Whether the trial court err[ed] in failing to instruct the jury that they should disregard any evidence regarding a shooting of the Woodlawn House where the court had dismissed those charges at the close of the Commonwealth's case?

After a review of the parties' briefs, the record on appeal, and relevant case law, we conclude that the trial court opinions, authored by Judge Connelly, properly dispose of Barnett's first two claims on appeal. Therefore, we rely upon Judge Connelly's November 14, 2014 opinion and November 13, 2015 opinion to affirm these issues.[8]  **See** Trial Court Opinion (suppression issue), 11/14/14, at 5-6 (traffic stop based upon officers' reasonable suspicion where CI's tip was corroborated and very specific; CI

_____

[7] In **Commonwealth v. Hunt**,  858 A.2d 1234, 1238 (Pa. Super. 2004) (en banc), our Court set forth the proper standard of review and scope of review for Rule 600 cases as follows:

> In evaluating Pa.R.Crim.P. 600 issues, the appellate court's standard of review of a trial court's decision is whether the trial court abused its discretion.  An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused. The proper scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court.  An appellate court must view the facts in the light most favorable to the prevailing party.

[8] We instruct the parties to attach a copy of Judge Connelly's opinions in the event of further proceedings in the matter.

told officers that red/burgundy Ford van with registration plate number JML4554 that had been involved in rash of shootings was parked in specific area; that more shootings may happen in vicinity in future; officers located exact van in area cited by CI; van fled from police as they followed it; shots fired in second area reported by CI; and van seen by witnesses leaving shooting area and being driven by same black male wearing white t-shirt whom officers had seen enter van earlier);[9] *see* Trial Court Opinion (Pa.R.Crim.P. 600 issue), 11/13/15, at 2-3 (Rule 600 run date not violated where withdrawal and re-filing of charges by Commonwealth was necessitated by factors beyond its control, Commonwealth exercised due diligence, and re-filing was not attempt to circumvent Rule 600 time limitations).[10]

Barrett's final issue, regarding the trial court's failure to give a cautionary instruction to the jury that the evidence from the Woodlawn Avenue house shooting should be disregarded in their deliberations, is

---

[9] *See also Commonwealth v. Griffin*, 954 A.2d 684 (Pa. Super. 2008) (corroboration of information provided gave informant's statements reliability).

[10] *See generally Commonwealth v. Dixon*, 140 A.3d 718 (Pa. Super. 2016) (sets forth burden of proof for Commonwealth under former Rule 600 when initial complaint withdrawn or dismissed and charges re-filed). In 2012, former Rule 600 was rescinded and new Rule 600 was adopted to reorganize and clarify the provisions of the rule in view of the long line of cases that have construed the rule. However, the due diligence standard remains consistent in both versions of the rule.

waived on appeal.  Barnett failed to preserve his challenge to the court's instruction by not objecting when it was given.  **See** Pa.R.A.P. 302(b); N.T. Jury Trial, 11/19/15, at 173.  Moreover, raising the issue in a Rule 1925(b) statement of errors complained of on appeal does not overcome the requirement that a defendant contemporaneously object at trial. **Commonwealth v. Ali**, 10 A.3d 282 (Pa. 2010).

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/4/2016

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
: OF ERIE COUNTY, PENNSYLVANIA
v. : CRIMINAL DIVISION
:
MARQUISE BARNETT : No. 1671 of 2015

# OPINION

Connelly, P. J., November 13, 2015

The matter before the Court is pursuant to a Motion to Dismiss for Violation of Rule 600 filed by Marquise Barnett (hereinafter "Defendant"). The Commonwealth opposes. A hearing was held before the Court on this matter on November 10, 2015.

## FACTS

On May 22, 2014, Officer DeLuca of the Erie Police Department arrested the defendant on Firearm, Fleeing and Eluding, and Accidents Involving Damage to Property charges pursuant to an attempted traffic stop of a van the defendant was operating.[1] Relative thereto a Forensic Examination Request was generated on May 22, 2014 by Officer DeLuca as to two firearms that were recovered. (**See** Com. Ex.1).

In an incident that occurred on May 21, 2014 on Woodlawn Avenue that may have been related to the above, the police, via requesting Ptlm. Brown, also sent several bullets and shell casings for testing. Comparison Testing was additionally requested by Officer DeLuca as to all materials in both crimes. (Com.Ex.1). The firearms and bullets were received by the Pennsylvania State Police later on June 18, 2014 and June 19, 2014 (*see* Com.Exs.3 & 4).

---

[1] For full details of this incident **see** this Court's detailed Opinion dated November 14, 2014.

1

The case at 17th and Poplar involving Officer DeLuca was first scheduled for trial in the January 2015 term. It was not called. It was scheduled again in the March Term and was continued by the defense. It was then called for trial in the April term and prior to jury selection on April 6, 2015 the Firearm and Tool Examiner for the Pennsylvania State Police, Bureau of Forensic Services, issued his report (*see* Com.Exs.5 & 6), revealing for the first time that the incidents were in fact related as one of the firearms (Kahn Arms) could have discharged one of the bullets and that the other (Taurus) did discharge one of the bullets. Based on the above information the Commonwealth moved to nolle pros the charges and Officer DeLuca refiled them (on April 15, 2015) with additional charges of Aggravated Assault (two counts), Discharge of a Firearm into an Occupied Structure and Reckless Endangering (two counts) based on the new information contained in the forensics report.

## LAW

The Pennsylvania Supreme Court has held that the Rule 600 run date is calculated from the second filing only in circumstances where the withdrawal and refiling are necessitated by factors beyond the Commonwealth's control, the Commonwealth has exercised due diligence and the refiling was not an attempt to circumvent the limitations of Rule 600. *Com. v. Meadius*, 870 A.2d 802 (Pa. 2005),

In the case at bar the withdrawal (nolle pros) and refiling of the charges was necessitated by forensic information the Commonwealth received on the day it was prepared in all aspects to commence trial against the defendant in a timely fashion (after a defense continuance from the prior term). The completion, issuance and timing

2

of the forensic report were factors beyond the Commonwealth's control and in all likelihood solely dependent on the particular examiner's work load.

Second, the Commonwealth exercised due diligence in scheduling the trial on the first day of the April 2014 Court term after the defendant's continuance from the March term. In all aspects of the case the Commonwealth was ready, willing and able to try the case at that time.

And finally, while the Commonwealth was aware that dismissal and refiling would, as a collateral consequence, result in a technical violation of Rule 600, such was done so not to circumvent Rule 600, but obviously to comply with the requirements of 18 Pa.C.S.A.§110(1)(ii) as to compulsory joinder and to avoid running afoul of this statute barring later separate prosecution. The Court finds the Commonwealth's decision to be eminently reasonable under the circumstances, and the Commonwealth should not be punished under Rule 600 for its decision. A dismissal affects the prosecution but also diminishes the public's confidence as to its reasonable expectation that those who have been charged with crimes will face a jury of their peers. *Com. v. Schaffer*, 712 A.2d 749 (Pa. 1998). And the extreme sanction of dismissal should only be imposed in blatant cases of prosecutorial misconduct. *Com. v. Burke*, 781 A.2d 1136 (Pa. 2000). Here the actions of the Commonwealth are not so egregious (they were in fact reasonable) that the extreme remedy of dismissal be imposed. *Com. v. Goldman*, 70 A.3d 874 (Pa.S. 2013).

3

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
                                  : OF ERIE COUNTY, PENNSYLVANIA,
              vs.                 : CRIMINAL DIVISION

MARQUISE BARNETT               : No. 1633-2014

## OPINION

Connelly, J., November 14, 2014

The matter before the Court is pursuant to an Omnibus Pre-Trial Motion filed by Marquise Barnett (hereinafter "Defendant"). The Commonwealth opposes. A hearing was held after which both Defendant and the Commonwealth submitted briefs.

### Statement of Facts

At the October 8, 2014, Omnibus Pre-Trial Hearing Officer Deluca testified that on or around May 21, 2014, Det. Bizzarro informed him that a Burgundy Ford Van with license plate number JML4554 ("the van") "had allegedly been involved in a rash of shootings and may soon be involved in additional shootings." *Def.'s Br. in Supp. 1-2.* Det. Bizzarro testified that a known confidential informant (CI) informed him that the "van was kept in the area of 17th and Poplar Streets" and that more shootings may happen in the future "in the areas of 6th and Wallace Streets and/or 29th and German Streets and that the shootings were over some type of vendetta." *Def.'s Br. in Supp. 2-3*

On May 21, 2014, between 10:00 and 11:00 pm, Officers Deluca and Stadler were patrolling the vicinity of West 17th and Poplar Streets looking for the van pursuant to the information received from the confidential informant (CI). *Comm.'s Br. in Opp. 2., Def.'s Br. in Supp. 2*. After locating the van in the 700 block of West 17th street, the Officers observed an individual enter it and proceed to drive down West 17th Street.

1

*Def.'s Br. in Supp. 2.*, *Comm.'s Resp. 3.* After the van drove away the officers "tried to follow the van but lost it after a couple of blocks." *Def.'s Br. in Supp. 2.* Approximately twenty to thirty minutes later "a report came over the police radio of shots fired in the area of 6th and Wallace Streets" and later "in the area of 29th and German Streets" and Woodlawn Avenue. *Id. at 3.* On May 22, 2014, at 12:04am, the Officers observed the same van "driving north on Poplar Street between West 18th and West 19th Streets." *Id. at 4.* The Officers attempted to effectuate a traffic stop by turning behind the van and activating their lights and siren. *Id.*

After activating the lights and siren the van sped off and a silver object was thrown from the driver's side window. *Preliminary Hearing Transcript (P.T.) 5:21-23, 17:20-24.* The van went through a stop sign and came to rest against the front stairs of a house. *P.T. 6:10-17.* As a black male wearing a white T-shirt exited the side door of the van and proceeded to run, the Officers observed a dark object fall from his person. *P.T. 6:24-25, 7:1-19.* Officer Stadler pursued the Defendant and ultimately took him into custody. *P.T. 21:4-25, 22:1-23.* As Officer Stadler handcuffed the Defendant's left hand the Defendant pulled his right arm from behind his back and Officer Stadler struck him once in the face and right arm "to safely get him into custody." *P.T. 22:8-120.*

Defendant avers all items seized as the result of the initiation of the traffic stop should be suppressed as the stop was illegal "as each of those items would be fruits from a poisonous tree." *Def.'s Mot. ¶ 24.* Defendant also requests the "charges of Possession of Firearm with altered Serial Number; Persons Not to Possess Firearm (2cts); Firearm w/o license (2cts); RSP, Resisting Arrest; Flee/Eluding; and Accidents

2

involving Damage"[1] be dismissed[2] "for lack of prima facie evidence." ***Def.'s Mot. ¶ 40.*** The Commonwealth argues Defendant's Motion to Suppress should be denied because the Officers "possessed reasonable suspicion to initiate a traffic stop of the van" and "the Commonwealth met its burden of proving a prima facie case. . ." ***Comm.'s Resp. 8***.

## Analysis of Law

**I. Defendant avers the Officers initiated an unlawful traffic stop and thus the items seized as a result should be suppressed as fruits from the poisonous tree.**

Defendant seeks to suppress all evidence seized as a result of the attempted investigatory stop[3] asserting that the Officers did not have reasonable suspicion, based on the information from the CI, and the shots fired reports from the evening of May 21, 2014, to pull over the van. ***Def.'s Br. in Supp. 5***. The Commonwealth argues the Officers "possessed reasonable suspicion to initiate a traffic stop of the van. . ." ***Comm.'s Resp. 5***.

To legally institute an investigative detention/traffic stop an officer must have at least a reasonable suspicion criminal activity is afoot. ***Commonwealth v. Jones***, 874 A.2d 108, 116 (Pa. Super. 2005). The Court may find reasonable suspicion exists only where an officer is able to "articulate specific observations which, in conjunction with reasonable inferences derived from these observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and the person he stopped was involved in that activity." ***Commonwealth v. Fulton***, 921 A.2d 1239, 1243 (Pa. Super. 2007). "The totality of the circumstances standard remains the governing standard for the reasonable suspicion analysis and demands an objective consideration of all factors

---

[1] Defendant does not address the Disorderly Conduct Charge in his Motion or Brief in Support.
[2] The charge of driving under suspension was dismissed at the Preliminary Hearing. *P.T. 32:5-11.*
[3] The parties do not dispute that the Officers' attempt to pull over the van was an investigative detention.

3

attending a tip provided by a police informant -- anonymous or not." ***Commonwealth v.***

***Brown***, 996 A.2d 473, 479 (Pa. 2010).

Although taken alone, facts such as fleeing the scene or mere presence in a high

crime area do not establish reasonable suspicion, a combination of these factors may

establish reasonable suspicion. ***Commonwealth v. Cook***, 735 A.2d 673, 677 (Pa.

1999) (citations omitted). The Pennsylvania Superior Court has found:

> When an identified third party provides information to the
> police, we must examine the specificity and reliability of the
> information provided. The information supplied by the
> informant must be specific enough to support reasonable
> suspicion that criminal activity is occurring. To determine
> whether the information provided is sufficient, we assess the
> information under the totality of the circumstances. The
> informer's reliability, veracity, and basis of knowledge are all
> relevant factors in this analysis.

***Commonwealth v. Barber***, 889 A.2d 587, 593-94 (Pa. Super. 2005) (quotations,

quotation marks, and citations omitted).

While reasonable suspicion is a less rigorous standard than probable cause,

> information received from confidential informants may
> properly form the basis of a probable cause determination. . .
> An informant's tip may constitute probable cause where
> police independently corroborate the tip, or where the
> informant has provided accurate information of criminal
> activity in the past, or where the informant himself
> participated in the criminal activity.

***Commonwealth v. Luv,*** 735 A.2d 87, 90 (Pa. 1999). In the instant case, Det.

Bizzarro testified "he had used this particular CI for approximately 10 years, and that

he/she had provided reliable information on numerous prior cases which led to arrests"

as well as "conviction for crimes, including homicide." ***Def.'s Br. in Supp. 2, Comm.'s***

***Resp. 2.*** See ***Commonwealth v. Williams,*** 2 A.3d 611, 613 (Pa. Super. 2010) (finding

4

CI to be reliable where CI had provided information for ten (10) years which led to convictions of over twenty individuals for felony drug violations.) Thus, the record establishes the CI was known to Det. Bizzarro and had provided accurate information of criminal activity in the past.

During their surveillance during the night and early morning on May 21 and May 22, 2014, Officers Stadler and Deluca corroborated the existence of a Red/Burgandy Ford Van with registration plate number ML4554, which was parked near West 17th and Poplar Streets. *Comm.'s Resp. 7.* Shortly after losing sight of the van, the CI's information was further corroborated when shots were reported fired in the areas of East 6th and Wallace and East 29th and State Streets, as well as Woodlawn Avenue where a witness reported seeing a "maroon full sized van leaving the area." *Comm.'s Resp. 7.*

> This ability to predict future events is relevant because only a small number of people are generally privy to an individual's itinerary, [and] it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities."

*Commonwealth v. Griffin,* 954 A.2d at 651 (internal citation and quotation omitted).

After the reported shootings the Officers saw the same van returning to the area of West 17th and Poplar Street, being driven by the same black male wearing a white t-shirt whom they had seen entering the van earlier. *Comm.'s Resp. 7.* See *Commonwealth v. Griffin,* 954 A.2d 648, 653 (Pa. Super. 2008) (Finding reasonable suspicion existed where officers independently verified the defendant's name, address, license number, and type of truck, conditions of defendant's house arrest, and that defendant would shortly be leaving his house to manufacture drugs.) Thus, at the time

5

the Officers activated the lights and siren and attempted to effectuate the investigatory stop of the van they had reasonable suspicion, based on the previously reliable CI's corroborated present information, that criminal activity was afoot and any persons in the van may be involved in that activity. Therefore, the investigatory stop was proper and evidence discovered as a result of the stop is not fruit from the poisonous tree and shall not be suppressed.

**II. Defendant avers the Commonwealth has failed to present a prima facie case pursuant to the charges of Resisting Arrest, Receiving Stolen Property, Possession of a Firearm with an Altered Serial Number, Flee/Eluding, Accidents Involving Damage and two counts each of Persons not to Possess Firearms and Possession of Firearm without a license.**

Defendant avers the record has not established he was the driver of the van, that he possessed either handgun, that he intentionally moved his arm or that the Officer Stadler required 'substantial force' to overcome any resistance. *Def.'s Br. in Supp.8-9*. The Commonwealth argues it has met its prima facie burden as to the remaining charges. *Comm.'s Resp. 9-11*.

> A trial court may grant a defendant's petition for writ habeas corpus where the Commonwealth has failed to present a *prima facie* case against the defendant. A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes sufficient probable cause to warrant the belief that the accused committed the offense. Notably, the Commonwealth does not have to prove the defendant's guilt beyond a reasonable doubt. Further, the evidence must be considered in the light most favorable to the Commonwealth so that inferences that would support a guilty verdict are given effect.

*Commonwealth v. Santos*, 876 A.2d 360, 363 (Pa. 2005) (citations and internal quotations omitted). Pennsylvania law has established, "[a]ny driver of a motor vehicle who willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or

6

attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop, commits an offense as graded in subsection (a.2.)." *75 Pa. C.S. § 3733.*

Here, the Commonwealth asserts:

> The Patrolmen saw a black male in a white t-shirt enter the van and then saw the van leave the West 17 and Poplar area. After losing surveillance and responding to the shooting call(s), the Patrolmen again observed the suspect van being operated by a black male with a white t-shirt. After the chase where the van ran over the curb, hit a sign and struck the steps and halted, the side van doors opened and the only occupant to alight from the van was a black male with a white t-shirt[4]. . .Patrolman Stadler saw the suspect go over a fence and went around to cut him off, all along hearing him run between the houses. Patrolman Stadler found the suspect and took him into custody, the suspect was identified as the Defendant.

*Comm.'s Resp. 8-9*.

Although Defendant asserts "there was no evidence presented that the Defendant was the driver of the van. . ." the Court finds the record establishes the Defendant was the only person in the van and therefore must have been the operator. *Def.'s Br. in Supp. 8.* Thus, the Defendant willfully failed or refused to bring the van to a stop and then fled from Officer Stadler. See *Commonwealth v. Villanueva*, 2010 Pa. Dist. & Cnty. Dec. LEXIS 188, *10-13 (Lehigh 2010) (Finding the Commonwealth presented a prima facie case for fleeing/eluding where the defendant "turned sharply and pulled behind the garage in order to avoid being stopped.")[5]

---

[4] On Page 4 (four) of its Response the Commonwealth stated the Defendant exited the van "just before the van hit a street sign and the front stairs of a residence." *Comm.'s Resp. 4.* The Court finds the direct testimony from the Preliminary Hearing to be the more accurate account.

[5] In that case the Court also found: "[t]he Defendant further conceded that he had switched places with his female passenger to create the illusion that she had been driving the car." *Villanueva*, at *10.

7

Defendant asserts as "there was no evidence presented that the Defendant ever possessed either of the firearms" the charges relating to the recovered handguns cannot be sustained. *Def.'s Br. in Supp. 8*. The Commonwealth argues "the evidence clearly shows circumstantially he was in actual possession or in the alternative was in constructive possession of the firearms." *Comm.'s Resp. 9*.

As to the charge Persons not to Possess Firearms, Pennsylvania law establishes:

> A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

*18 Pa.C.S. § 6105(a)(1).*

The charges of Firearms Not to Be Carried without a License and Persons not to Possess Firearms may be established where defendant is found to be in constructive possession of a firearm. *Commonwealth v. De Vaughn Hawkins*, 22 Pa. D. & C.5th 406, 410 (Lawrence 2011) citing *Commonwealth v, Gutierrez*, 969 A.2d 584, 590 (Pa. Super. 2009). "In order to prove that a defendant had constructive possession of a prohibited item, the Commonwealth must establish that the defendant had both the ability to consciously exercise control over it as well as the intent to exercise such control." *De Vaughn Hawkins*, 22 Pa. D. & C.5th at 411. See *Gutierrez*, 969 A.2d at 590.

In the instant case, the Commonwealth alleges "the defendant to be sole occupant and driver of the vehicle." *Comm.'s Resp. 9*. While pursuing the vehicle,

8

Officer Deluca "observed a silver object being tossed out of the driver's side window." ***Comm.'s Resp. 9.*** Officer Deluca returned to where "silver object was tossed and located a silver .40 caliber Kahr semiautomatic handgun with an obliterated serial number. . .it had scrape marks consistent with being tossed across the hard road surface." ***Comm.'s Resp. 9-10.*** "At the time the Defendant jumped from the vehicle, Patrolman Deluca observed a dark colored object fall from the defendant's body. It fell to the ground with a metal thud. Patrolman Deluca immediately yelled 'gun, gun, gun.' Patrolman Deluca recovered the object, a revolver from the ground." ***Comm.'s Resp. 10.*** At the Preliminary Hearing Officer Deluca testified the Defendant's prior record prohibited him from possessing a firearm. ***P.T. 11:6-22***. Thus, as the Commonwealth has presented sufficient information to establish that the Defendant had physical control over the guns, utilized that control, and that he was prohibited from owning a firearm, the Commonwealth has pled the necessary elements as to the charge of Persons not to Possess Firearms pursuant to 18 Pa. C.S. § 6105.

As to the charges of Possession of Firearm without a license, Pennsylvania law established:

> Except as provided in paragraph (2), any person who carries
> a firearm in any vehicle or any person who carries a firearm
> concealed on or about his person, except in his place of
> abode or fixed place of business, without a valid and lawfully
> issued license under this chapter commits a felony of the
> third degree.

***18 Pa. C.S. § 6106(a)(1)***. Here, the Commonwealth has pled Defendant possessed the firearms recovered and was prohibited from doing so. Thus, the Commonwealth has pled the necessary elements as to the charge of Possession of Firearm without a License.

9

As to the charges of Possession of a Firearm with an Altered Serial Number and Receiving Stolen Property, Pennsylvania law establishes: "No person shall possess a firearm which has had the manufacturer's number integral to the frame or receiver altered, changed, removed or obliterated." *18 Pa.C.S. § 6110.2(a)*. "A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." *18 Pa.C.S. § 3925(a)*.

Here, the Commonwealth alleges the Defendant tossed "a silver .40 caliber Kahr semiautomatic handgun with an obliterated serial number" from the driver's side window the van. *Comm.'s Resp. 9-10.* Also, "[a]t the time the defendant jumped from the vehicle, Patrolman Deluca observed a dark colored object fall from the defendant's body." *Comm.'s Resp. 10.* Officer Stadler testified "the revolver was recovered outside of the van. . .The revolver came back stolen. . ." *P.T. 23:2-8.* Thus, as the Commonwealth has set forth that Defendant possessed these firearms, one with an altered serial number and one which was reported as stolen, the Commonwealth has sufficiently pled the elements of Possession of a Firearm with an Altered Serial Number and Receiving Stolen Property.

As to the charge of Resisting Arrest or Other Law Enforcement:

> A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

*18 Pa. C.S. § 5104.*

10

The statute "does not require the aggressive use of force such as a striking or kicking of the officer." *Commonwealth v. Villanueva*, 2010 Pa. Dist. & Cnty. Dec. LEXIS 188, *10-13 (Lehigh 2010) (quoting *Commonwealth v. Miller*, 327 Pa. Super. 154, 475 A.2d 145, 146 (Pa. Super. 1984). In *Villanueva* the Commonwealth was found to have made a prima facie case for resisting arrest where the arresting officer "needed to apply 'wrist pressure' to gain compliance from the Defendant" and another police officer was needed to place him in handcuffs while the defendant "rebuffed the Officers' attempts to place him in Officer Williams' police cruiser." *Id.*

Here, the Commonwealth sets forth Officer Stadler, gun drawn, ordered the defendant to the ground. *Comm.'s Resp. 11*. After handcuffing the Defendant's left arm, "the defendant moved his other arm away, towards his waist." *Id.* Officer Stadler, "[f]earing the defendant may have a firearm and trying to gain access to it, . . .struck twice before he was able to handcuff him." *Id.* Thus, the Commonwealth has sufficiently established their prima facie case against Defendant for resisting arrest as his actions prevented Officer Stadler from effectuating a lawful arrest and Officer Stadler, believing Defendant may have been armed employed substantial force to overcome the resistance.

As to the charge of Accidents Involving Damage:

> The driver of any vehicle involved in an accident resulting only in damage to a vehicle or other property which is driven or attended by any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 3744 (relating to duty to give information and render aid). Every stop shall be made without obstructing traffic more than is necessary.

11

*75 Pa. C.S. § 3743(a)*. The Pennsylvania Superior Court held "that the duty to stop under section 3743 arises whenever a driver knows, or in the exercise of reasonable care should know, that his vehicle has been involved in an accident." *Commonwealth v. Kauffman*, 470 A.2d 634, 640 (Pa. Super. 1983). Here, Officer Deluca testified the Defendant, while fleeing, "ran over a posted sign and then the vehicle came to rest against the front stairs of a house." *P.T. 6:15-17*. Officer Deluca also testified the Defendant exited the van after came to a stop against the house.[6] *P.T. 6:22-5, 7:1*. Thus, the Court finds the Commonwealth has sufficiently established the Defendant knew, or should have known, that the van was involved in an accident pursuant to 75 Pa. C.S. §3743(a). Therefore, the Court finds the Commonwealth has established prima facie cases for the charges of charges of Possession of Firearm with altered Serial Number; Persons Not to Possess Firearm (2cts); Firearm w/o license (2cts); RSP, Resisting Arrest; Flee/Eluding and Accidents involving Damage.

---

[6] In its Response the Commonwealth stated the Defendant exited the van "just before the van hit a street sign and the front stairs of a residence." *Comm.'s Resp. 4.* The Court finds the direct testimony from the Preliminary Hearing to be the more accurate account.

12