J-A05028-16

2016 PA Super 116

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOEY I. DIXON | |
| Appellant | No. 211 EDA 2015 |

Appeal from the Judgment of Sentence August 5, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003861-2011

BEFORE: OLSON, J., OTT, J., and STEVENS, P.J.E.[*]

OPINION BY OTT, J.: **FILED JUNE 07, 2016**

Joey I. Dixon appeals from the judgment of sentence imposed August 5, 2014, in the Philadelphia County Court of Common Pleas. The trial court sentenced Dixon to an aggregate term of 20 to 40 years' imprisonment, plus five years' consecutive probation, following his conviction of robbery, aggravated assault, possessing an instrument of crime ("PIC"), possession of a firearm without a license, and possession of a firearm by a person prohibited.[1] On appeal, Dixon challenges only the trial court's denial of his pretrial motion to dismiss the charges based on a violation of Pennsylvania Rule of Criminal Procedure 600. For the reasons that follow, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S. §§ 3701, 2702(a)(1), 907, 6106, and 6105, respectively.

The facts underlying Dixon's arrest and conviction are aptly summarized by the trial court as follows:

On November 19, 2010, Hasan Sampson agreed to meet [Dixon] at 5266 Burton Street, in the City and County of Philadelphia. Mr. Sampson drove to the location alone and double parked in the middle of the street to speak with [Dixon]. During the conversation, [Dixon] told Mr. Sampson to get out of the car, but Mr. Sampson was afraid and refused, [and] he then subsequently drove away. [Dixon] then called Mr. Sampson and asked him to return to Burton Street and Mr. Sampson complied. When Mr. Sampson returned, [Dixon] convinced him to get out of the car by stating "you my folks. Ain't nothing gonna happen." When Mr. Sampson stepped out of the car[, Dixon] grabbed him and attempted to take two phones and money out of Mr. Sampson's pocket. During the altercation, [Dixon] stated "I'm telling you, I'm gonna pop you." [Dixon] then shot Mr. Sampson in the leg. As Mr. Sampson ran to his car another shot was fired, but missed Mr. Sampson. Mr. Sampson was then taken to the hospital by his family members.

After the shooting, the police received a 911 call reporting gunshots on [the] 5200 block of Burton Street. According to Officer Joseph Weihe, after arriving to the scene and doing a search of the area, the officers found blood on the ground that continued in a trail that led across the street. The officers then notified their superior and secured the scene to preserve any evidence. Around this time a call came into 911 from Aria Frankford Hospital reporting a patient with a gunshot wound. Officer Joseph Tigue responded to the hospital and took a statement from Mr. Sampson. Detective Christopher Casee was assigned to the case and responded to the scene on the night of the shooting. After leaving the scene, the detective went to the hospital to speak with Mr. Sampson. Mr. Sampson stated that he could not speak to the detective at that time so Detective Casee left the hospital. Mr. Sampson arrived at Northeast Detectives on November 22, 2010 to give a statement to Detective Casee. In this statement, Mr. Sampson identified [Dixon] as the person who shot him. During their investigation, the Philadelphia police recovered a fired .9-millimeter shell casing from the 5200 Burton Street area the following day. Based on the statement given by Mr. Sampson, police obtained and executed search warrants for locations where [Dixon] was

thought to be. [Dixon] was subsequently arrested at one of these locations while the police were serving the search warrant.

Trial Court Opinion, 8/3/2015, at 2-3 (record citations omitted).

On November 23, 2010, Dixon was charged with attempted murder, robbery, theft, aggravated assault, simple assault, recklessly endangering another person ("REAP"), PIC, possession of a firearm without a license, and possession of a firearm by a person prohibited.[2] Dixon's preliminary hearing was continued twice when the victim, Sampson, failed to appear for court. Thereafter, on February 1, 2011, Sampson was in the courthouse, but left before the hearing began.[3] The Commonwealth requested another continuance, and later that month, withdrew all of the charges ("assault charges"), except for the charge of possession of a firearm by a person prohibited ("Section 6105 charge"), which could be tried without Sampson.[4] Shortly thereafter, the Commonwealth re-filed the assault charges, but

_____

[2] **See** 18 Pa.C.S. §§ 2502, 3701, 3921, 2702(a)(1), 2701, 2705, 907, 6106, and 6105, respectively.

[3] At the Rule 600 hearing, Assistant District Attorney William Frantz, Jr. ("ADA Frantz") testified that Sampson "didn't come willingly" to court, but was "brought in by the detectives[.]" N.T., 3/5/2014, at 32-33. ADA Frantz stated Sampson expressed he did not want to testify, and when ADA Frantz explained he was required to do so under subpoena, "[t]he impression he gave to [ADA Frantz] was of great reluctance if not outright fear of testifying." **Id.** at 34-35.

[4] At the Rule 600 hearing, ADA Frantz indicated the Section 6105 charge was based on a firearm discovered in Dixon's belongings during the execution of a warrant. **See id.** at 37-38.

withdrew them again on March 30, 2011.  The case then proceeded on the Section 6105 charge only.

In the summer of 2012, ADA Franz was transferred to another office, and Assistant District Attorney Alisa Shver ("ADA Shver") was re-assigned his cases.  *See* N.T., 3/5/2014, at 40, 42.  On September 10, 2012, when the trial court was holding a scheduling conference for the Section 6105 charge, Sampson walked into the courtroom.  After speaking with Sampson, ADA Shver re-filed the assault charges on December 20, 2012, but "because of the nature of [her] discussion … with Mr. Sampson[,]" she "moved the case into the Grand Jury proceeding."  N.T., 3/5/2014, at 62.  On January 25, 2013, a grand jury indicted Dixon on charges of attempted murder, aggravated assault, robbery, PIC, possession of a firearm without a license, and possession of a firearm by a person prohibited.  Thereafter, Dixon moved to dismiss the charges based on a Rule 600 violation.[5]  The trial court held a hearing on March 5, 2014, and on March 31, 2014, denied Dixon's Rule 600 motion.

The case proceeded to a jury trial on June 2, 2014.  At the beginning of trial, the Commonwealth nol-prossed the attempted murder charge, and the court bifurcated the Section 6105 charge.  On June 5, 2014, the jury returned a verdict of guilty on the charges of robbery, aggravated assault,

_____

[5] A Rule 600 motion to dismiss is not included in the certified record.

- 4 -

PIC, and possession of a firearm without a license. The trial court found Dixon guilty of the Section 6105 charge.

On August 6, 2014, Dixon was sentenced to consecutive terms of 10 to 20 years' imprisonment for robbery, 10 to 20 years' imprisonment for aggravated assault, and five years' probation for the Section 6105 charge. No further punishment was imposed on the remaining charges. Dixon filed a post-sentence motion on August 8, 2014, and an amended post-sentence motion on November 21, 2014. The trial court conducted a hearing, and on January 8, 2015, denied Dixon's motions. This timely appeal followed.[6]

Dixon frames his sole issue on appeal as follows:

Did the Lower Court err in denying the motion to dismiss under Rule 600 … where the Commonwealth failed to exercise due diligence in producing the complainant to testify?

Dixon's Brief at 4.

Pennsylvania Rule of Criminal Procedure 600 was designed "to protect a defendant's speedy trial rights, as well as society's right to effective prosecution of criminal cases." *Commonwealth v. Thompson*, ___ A.3d ___, 2016 PA Super 75, *2 (Pa. Super. 2016) (quotation omitted). The Rule mandates, *inter alia*, that a defendant must be tried on criminal charges no

---

[6] On January 29, 2015, the trial court ordered Dixon to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Dixon complied with the court's directive, and filed a concise statement on February 19, 2015.

later than 365 days after the criminal complaint is filed. Pa.R.Crim.P. 600(A)(1)(3).[7]

> This straightforward calculation is known as the mechanical run date. ***See***, ***e.g.***, [***Commonwealth v.***] ***Ramos***, 936 A.2d [1097] 1102 [(Pa. Super. 2007)]. However, those periods of delay caused *by a defendant* are excluded from the computation of the length of time of any pretrial incarceration. Pa.R.Crim.P. 600(C). Following these exclusions, if any, we arrive at an adjusted run date by extending the mechanical run date to account for these exclusions. ***See***, ***e.g.***, ***Ramos***, 936 A.2d at 1102. Any other delay that occurs, despite the Commonwealth's due diligence, is deemed excusable and results in further adjustments to the effective run date. Pa.R.Crim.P. 600(G); ***see also Ramos***, 936 at 1102 (explaining that "[e]xcusable delay is a legal construct that takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence") (internal punctuation and citation omitted).

***Thompson***, ***supra***, ____ A.3d ____, 2016 PA Super 75, at *3 (emphasis in original).

After the expiration of the 365-day period, but before trial, a defendant may move for dismissal of the charges with prejudice. ***See*** Pa.R.Crim.P. 600(G). Thereafter, the trial court is required to hold a hearing to determine whether the Commonwealth "exercised due diligence and [whether] the circumstances occasioning the postponement were beyond the

_____

[7] We note that a new Rule 600 was adopted, effective July 1, 2013, "to reorganize and clarify the provisions of the rule in view of the long line of cases that have construed the rule." Pa.R.Crim.P. 600, Comment. However, because the criminal complaint in this case was filed prior to the new rule, we will apply the former version of Rule 600. ***Commonwealth v. Roles***, 116 A.3d 122, 125, n.4 (Pa. Super. 2015), *appeal denied*, 128 A.3d 220 (Pa. 2015).

control of the Commonwealth," in which case, the motion should be denied.

*Id.* When considering whether the Commonwealth acted with due diligence, we note:

> "[T]he Commonwealth must do everything reasonable within its power to guarantee that a trial begins on time," and the Commonwealth has the burden of demonstrating by a preponderance of the evidence that it exercised due diligence. "As has been oft stated, [d]ue diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort."

*Commonwealth v. Colon*, 87 A.3d 352, 359 (Pa. Super. 2014) (internal citations omitted).

In cases such as the one before us, where an initial complaint was withdrawn or dismissed and the Commonwealth has re-filed charges, we must also bear in mind the following:

> If, for example, the Commonwealth withdraws the first complaint in an attempt to avoid an imminent Rule 600 violation and then re-files the charges in hopes of circumventing that rule, then the Rule 600 time for the second complaint will be calculated from the filing of the first complaint.
>
> However, if the Commonwealth is diligent in prosecuting a complaint, and if the complaint is withdrawn or dismissed because of factors beyond the Commonwealth's control, then the Commonwealth, upon re-filing the charges in a second complaint, is entitled to have the time under Rule 600 run from the date of that second filing. Accordingly, in cases of subsequent complaints, the law requires that Rule 600 courts evaluate whether the Commonwealth was diligent with respect to the initial complaint.
>
> Additionally, if the Commonwealth was diligent in prosecuting the first complaint, the Commonwealth has no obligation under Rule 600 to re-file the charges within any particular time after the dismissal of the first complaint. This

- 7 -

principle arises from the fact that, while no complaint is pending, the language of Rule 600 is simply inapplicable. Moreover, in the absence of pending criminal charges, the individual in question is free—at least in a legal sense—from the anxiety that arises from official public accusation, and, as such, part of the purpose behind Rule 600—limiting the period of such anxiety—is not implicated. Naturally, the Commonwealth must comply with any applicable statute of limitations. However, for purposes of Rule 600, the time between the dismissal of the first complaint and the filing of the second is irrelevant if the Commonwealth was diligent on the first matter.

*Commonwealth v. Claffey*, 80 A.3d 780, 786-787 (Pa. Super. 2013) (internal citations omitted), *appeal denied*, 86 A.3d 231 (Pa. 2014).

We review an order denying a Rule 600 motion to dismiss for an abuse of discretion, considering only the evidence of record at the Rule 600 hearing, and the trial court's factual findings. *Commonwealth v. Rhodes*, 54 A.3d 908, 911 (Pa. Super. 2012) (citation omitted). Further, "[a]n appellate court must view the facts in the light most favorable to the prevailing party[,]" which, in this case, is the Commonwealth. *Id.* (quotation omitted).

Dixon's Rule 600 argument focuses on his assertion that "[t]he Commonwealth failed to exercise due diligence in producing the complaining witness Hasan Sampson for trial." Dixon's Brief at 16. Dixon states, "At all [relevant times before trial] … Sampson was under supervision of a Pennsylvania parole agent or incarcerated." *Id.* at 19. However, he emphasizes ADA Frantz made only one telephone call to Sampson's parole officer to determine his whereabouts, and never gave her a subpoena to serve on Sampson, or asked her to detain Sampson for his failure to appear

- 8 -

in court. *Id.* at 22. Moreover, although Sampson was incarcerated from April 2011 until February 2012, Dixon points out that ADA Frantz never performed a computer search to determine if Sampson was in custody. Similarly, he states, ADA Shver took no action to determine Sampson's location after she was assigned the case. Accordingly, Dixon asserts:

> Other than a single telephone call to [Dixon's] State Parole Agent [Kelly] Ashton, the Commonwealth did nothing to bring Hasan [Sampson] to court from February 1, 2011 when he disappeared from the court house until he showed up unexpectedly on September 10, 2012.

*Id.* at 27. Dixon contends "the Commonwealth must prove that it acted in due diligence in prosecuting the **second case** in order to receive the benefit of the run date commencing from the filing of the **third case**." Dixon's Brief at 19 (emphasis supplied). Because the Commonwealth failed to do so, Dixon argues the trial court erred in denying his Rule 600 motion.

The trial court, however, concluded the Commonwealth did not act intentionally to circumvent Rule 600(G), but rather, "exercised due diligence in bringing charges against [Dixon.]" Findings of Fact and Conclusions of Law, 3/31/2014, at 2. The court found the Commonwealth re-filed the assault charges on two separate occasions, and at each trial listing, issued a subpoena for Sampson's appearance. *Id.* However, "through no fault of [its] own, the complaining witness [] failed to appear." *Id.* Therefore, the trial court denied Dixon's Rule 600 motion.

Upon our review of the record, the parties' briefs, and the relevant statutory and case law, we find no abuse of discretion on the part of the trial

court. Dixon's primary contention is that time began running for Rule 600 purposes in February of 2011. Indeed, he emphasizes the Commonwealth did nothing from February 1, 2011, until September 10, 2012, to ensure Sampson would appear for trial. Dixon's Brief at 27. We find, however, that Dixon's Rule 600 time commenced on December 20, 2012, when the Commonwealth re-filed the assault charges for the third time.[8]

In *Commonwealth v. Meadius*, 870 A.2d 802 (Pa. 2005), the Pennsylvania Supreme Court considered the same question presented herein: When an initial complaint is withdrawn by the Commonwealth, and a second complaint is filed listing identical charges, must the Commonwealth bring the defendant to trial 365 days from the first or second filing? *Id.* at 803. In that case, the Commonwealth withdrew charges against the defendant after several continuances were granted at the Commonwealth's request, and "the district justice stated that he would dismiss the case if the Commonwealth did not withdraw the charges."[9] *Id.* The Commonwealth re-filed the same charges several months later, and after the expiration of 365 days from the filing of the first complaint, the defendant moved to dismiss

---

[8] We emphasize Dixon does not claim that his prosecution of the Section 6105 charge was violative of his Rule 600 rights.

[9] Specifically, at the first listing for the preliminary hearing, the prosecuting attorney was scheduled to attend a continuing legal education class. At the second hearing, a month later, a Commonwealth witness failed to appear. Finally, at the third listing, two Commonwealth witnesses were unavailable. *Id.* at 803.

the charges based on a violation of Rule 600. The trial court found the Commonwealth did not proceed with due diligence and granted the defendant's motion to dismiss.

On appeal, a panel of this Court reversed the trial court's decision. However, the Supreme Count subsequently reversed the panel's ruling, concluding the trial court's decision was not an abuse of discretion. Specifically, the Supreme Court held the Commonwealth may not obtain the benefit of the re-filing of a complaint when either (1) "the re-filing is intended to evade the rule's time limits[;]" or (2) "the serial filing is brought about because the prosecution does not exercise due diligence." ***Id.*** at 808. Because the record supported the trial court's finding that the Commonwealth failed to proceed with due diligence in prosecuting the first complaint, the ***Meadius*** Court concluded the trial court did not abuse its discretion in granting the defendant's motion to dismiss.

Subsequently, in ***Commonwealth v. Peterson***, 19 A.3d 1131 (Pa. Super. 2011) (*en banc*), *aff'd*, 44 A.3d 655 (Pa. 2012), an *en banc* panel of this Court considered the question left unanswered in ***Meadius***, that is, "whether the Commonwealth, under Rule 600, must exercise due diligence in re-filing a second complaint." ***Id.*** at 1139. The ***Peterson*** Court emphasized, "a Rule 600 analysis pertains to the Commonwealth's actions **during a pending action** and not after the court has dismissed a charge or charges." ***Id.*** (emphasis added). Accordingly, the Court held the delay between the dismissal of the first complaint and the re-filing of the second

complaint "is not within the parameters of Rule 600 since no complaint is pending during this period, and, on its face, the language of Rule 600 is inapplicable." *Id.* The **Peterson** Court outlined the relevant analysis as follows:

> In sum, when a trial court is faced with multiple identical criminal complaints, it must first determine whether the Commonwealth intended to evade Rule 600's timeliness requirements by withdrawing or having nolle prossed the charges. If the prosecution attempted to circumvent Rule 600, then the mechanical run date starts from the filing of the initial complaint, and the time between the dismissal of one complaint and the re-filing of the second complaint is counted against the Commonwealth. However, where the prosecution has not attempted to end run around the rule, and a competent authority properly dismissed the case,[10] the court must next decide if the Commonwealth was duly diligent in its prosecution of the matter. Where the prosecution was diligent, the inquiry ends and the appropriate run date for purposes of Rule 600 begins when the Commonwealth files the subsequent complaint.

*Id.* at 1141.

In the present case, the trial court found the Commonwealth "issued subpoenas for the complainant on all the trial dates in question, but [Sampson] failed to appear for reasons unattributable to the Prosecution." Findings of Fact and Conclusions of Law, 3/32/2014, at 2. Indeed, even at the February 1, 2011, listing, when Sampson was in the courthouse, he

---

[10] We note that, here, the charges were withdrawn by the Commonwealth, and not dismissed by "a competent authority" as in **Peterson**. *Id.* However, we find that distinction irrelevant since there is no evidence to dispute the trial court's conclusion that the Commonwealth did not act "intentionally to circumvent Rule 600(G)." Findings of Fact and Conclusions of Law, 3/31/2014, at 2.

"didn't come willingly," but rather was "brought in by the detectives." N.T., 3/5/2014, at 32-33. Shortly thereafter, the Commonwealth withdrew the assault charges. Although the Commonwealth re-filed the charges in February or March 2011, it withdrew them again on March 30, 2011.

ADA Frantz testified that he contacted Sampson's parole officer **after** the February 1, 2011, listing from which Sampson absconded. N.T., 3/5/2014, at 38-40. He knew Sampson was going to be "picked up" by State Parole, and asked Sampson's parole officer to let him know when that happened so the Commonwealth could re-file the assault charges. *Id.* at 40-41. ADA Frantz testified he had no recollection of Ashton ever notifying him that Sampson was in custody.[11] *Id.* at 41.

We agree with the trial court that the Commonwealth acted with due diligence while the charges were pending against Dixon. ADA Frantz issued subpoenas directing Sampson to appear in court, and when he did not do so, the prosecutor sent detectives to bring him in. However, after Sampson expressed to ADA Franz that he did not want to testify, and fled the courthouse, ADA Franz withdrew the assault charges. Accordingly, because we find the trial court did not abuse its discretion in determining the Commonwealth acted with due diligence while the assault charges were pending against Dixon, any purported lack of diligence on the part of the

_____

[11] Indeed, ADA Frantz explained that if he had known Sampson was in state custody, he would have "prepared a Writ to bring [Sampson] in." *Id.* at 48.

Commonwealth during the time when the charges were withdrawn but before they were re-filed, is irrelevant for Rule 600 purposes. **Peterson, supra**, 19 A.3d at 1139.

Because Dixon's argument focuses solely on the time period during which no charges were pending against him, we find he is entitled to no relief.[12]

Judgment of sentence is affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/7/2016

---

[12] We note Dixon does not contend the Commonwealth failed to diligently prosecute his case after re-filing the assault charges on December 20, 2012. Indeed, a review of the docket reveals most of the continuances from that time until his June 2, 2014, jury trial, were the result of defense requests, Dixon not being brought down from prison, or Dixon's pending Rule 600 motion.