J-S50027-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEON ELLIS | : | |
| | : | |
| Appellant | : | No. 2820 EDA 2019 |

Appeal from the Judgment of Sentence Entered September 20, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001952-2016

BEFORE:   BENDER, P.J.E., SHOGAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY SHOGAN, J.:                    **FILED MARCH 16, 2021**

Deon Ellis, Appellant, appeals from the judgment of sentence entered on September 20, 2019, following his convictions for rape, unlawful conduct with a minor, endangering the welfare of children, corruption of minors, and aggravated indecent assault of a minor less than sixteen years of age.[1]  After careful review, we affirm.

The trial court set forth the following factual history:

> L.R., the complainant herein, who was eighteen years[]old when she appeared as a witness at [Appellant's] trial, resided with her mother, grandmother, and her older sisters in West Philadelphia through her teen years.  Appellant, L.R.'s mother's boyfriend, also stayed there at various times.  In September of 2014, when L.R. was fourteen years[] old, L.R. had taken a shower

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3121(a)(1), 6318(a)(1), 4304(a)(1), 6301(a)(1)(i), and 3125(a)(8), respectively.

and as she exited the bathroom wrapped in a towel, she observed Appellant standing outside the door to her room. L.R. entered her room followed by Appellant, who closed the door to [L.R.'s] bedroom. L.R. was home that day because she had been suspended from school.

Once both Appellant and L.R. were inside the bedroom, Appellant pushed L.R. onto her bed. She was crying and yelling at the time and attempted to get some clothes. Appellant then forced L.R. to engage in sexual intercourse with him and he also stuck his fingers in her vagina. While this occurred, L.R. said she was not screaming because she was "stuck." During the assault, Appellant told L.R. that he would kill her. She did not tell anyone about the incident because she was scared that Appellant would follow through on his threat.

After the assault ended, Appellant left L.R.'s room and went to her mother's room when L.R.'s grandmother started coming up the stairs from the house's first floor. There was blood on the sheets and a towel and when asked by her grandmother where the blood had come from, L.R. falsely told grandmother that she was menstruating.

While still in her home[,] L.R. often saw [A]ppellant physically assault her mother. At some point she was removed from her home by the Philadelphia Department of Human Services (hereinafter DHS) because of the conditions of the home and was placed in a foster home. Once so placed, L.R. told her foster mother, Vonna Jones, and Ms. Jones' daughter about the rape. After doing so, authorities were contacted and L.R. provided statements to the police and others recounting the incident.

Ms. Jones confirmed that L.R. told her daughter and then her about the incident. She further related that she contacted authorities and relayed what L.R. had told her.

Philadelphia Police Detective Linda Blowes, assigned at the time to the Special Victim's Unit, interviewed L.R. who, when interviewed, could not recall Appellant's name. Through investigation, she uncovered information indicating that L.R.'s mother had obtained a Protection from Abuse order against Appellant and then showed his photograph to L.R., who identified him as the male who raped her. The detective also obtained L.R.'s

school records and noted that L.R. missed school several times in the fall of 2014, the year the incident occurred.

Trial Court Opinion, 3/2/20, at 1-3 (footnote omitted). Following a jury trial, Appellant was found guilty of Rape-Forcible Compulsion; Unlawful Contact with Minor-Sexual Offenses; Endangering Welfare of Children; Corruption of Minors; and Aggravated Indecent Assault (Complainant Less than 16). On September 20, 2019, the court sentenced Appellant to ten to twenty years of incarceration on the rape conviction, ten to twenty years of incarceration on the unlawful contact with a minor conviction, to be served consecutively, and ten years of probation for indecent aggravated assault–complainant under sixteen years old.[2]

Appellant filed his timely notice of appeal on September 27, 2019. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

Appellant presents the following questions for our review:

A. Did the trial court err, when it granted the Commonwealth's motion to admit other crimes, wrongs, or acts pursuant to Pa.R.E. 404(B) (also known as "prior bad acts" evidence) in the form of allegations that [Appellant] was physically abusive towards [] mother of Complainant L.R., as the probative value of this evidence was outweighed by its potential for unfair prejudice. (*See* Pa.R.E. 404(B)(2)).

B. Did the trial court err, when it granted the Commonwealth's motion in limine to exclude allegations of abuse by third parties, specifically with regard to allegations of physical abuse of

_____

[2]   The court did not impose any further sentence on the convictions for corruption of minors or endangering welfare of children. Appellant's charges of indecent exposure, indecent assault, sexual assault, aggravated indecent assault (without consent), and terroristic threats were *nol prossed*.

Complainant L.R., by her mother [], as this evidence was relevant under Pa.R.E. 401, due to the fact that L.R. was removed from her mother's home by the department of human services because she was physically abused by her mother?

C. Did the trial court err, when it denied the defense petition for dismissal of a case pursuant to Pa.R.Crim.P. 600(A) as, even taking excludable time into consideration, [Appellant] was not brought to trial within 365 days of the filing of the criminal complaint (December 17, 2015)?

Appellant's Brief at 2 (full capitalization omitted).

In his first issue on appeal, Appellant argues that the court erred when it granted the Commonwealth's Motion *in Limine* to Admit Other Acts/Crimes Evidence. Appellant's Brief at 19. In that motion, the Commonwealth sought the admission of testimony from L.R. that Appellant was physically abusive toward L.R.'s mother, as the evidence was relevant to show why L.R. waited to report the sexual assault until after January of 2015, when L.R. was no longer living in her mother's home. Commonwealth's Motion to Admit Other Crimes, Wrongs, or Acts Pursuant to Rule 404(b), 10/12/17. For the first time before this Court, Appellant argues that the probative value of the evidence was outweighed by the potential for prejudice. In its opinion, the trial court found that Appellant waived this issue because he objected to its admission on the ground that there was no tie between the alleged abuse of L.R.'s mother and the sexual assault, not on the ground that the prejudice outweighed the probative value of the evidence. Trial Court Opinion, 3/2/20, at 3-4 (citing **Commonwealth v. Cousar**, 928 A.2d 1025, 1040-1041 (Pa. 2007) (finding the appellant failed to preserve the argument that the

evidence's probative value was outweighed by prejudice for purposes of appeal, where the only objection lodged before the trial court was to the relevance of the evidence)). We agree with the trial court. Thus, Appellant has waived this argument.

Moreover, we note that even if Appellant had not waived this argument, he would be due no relief. Our standard of review when ruling on a trial court's decision to grant or deny a motion *in limine* is as follows:

> [W]e apply an evidentiary abuse of discretion standard of review. The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

*Commonwealth v. Danzey*, 210 A.3d 333, 337 (Pa. Super. 2019). The admissibility of prior bad acts is addressed by Pennsylvania Rule of Evidence 404(b), which states in relevant part:

> **(b) Crimes, Wrongs or Other Acts.**
>
> *(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> *(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.
>
> *(3) Notice in a Criminal Case.* In a criminal case the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence the prosecutor intends to introduce at trial.

Pa.R.E. 404(b)(1)-(3). With regard to prior bad acts, our Supreme Court has held as follows:

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 401(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 401(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

*Commonwealth v. Sherwood*, 982 A.2d 483, 497 (Pa. 2009) (some citations omitted).

In support of his appeal, Appellant highlights L.R.'s testimony that she witnessed Appellant punch her mother "a lot," that she saw her mother with black eyes, that her mother went to the hospital "a couple times," and that the police arrived at the house "a couple times" as a result of Appellant hitting L.R.'s mother. Appellant's Brief at 25 (citing N.T., 7/9/19, 36-37, 40). Appellant argues this testimony describes violent acts, whereas the crimes for which Appellant was on trial were sexually related offenses. *Id*. He further asserts that the victim of these alleged assaults was an adult woman, and L.R. was a minor at the time of the alleged rape. *Id.* at 25-26. Finally, Appellant argues, "[I]n hearing the testimony of [L.R.] that [Appellant] was physically abusive towards her mother … it was impossible for the jury to be fair and impartial." *Id*.

The Commonwealth, relying on our Supreme Court's decision in ***Commonwealth v. Dillon***, 925 A.2d 131 (Pa. 2007), argues that the evidence of the physical abuse of a family member was properly admitted. Specifically, the Commonwealth argues that L.R.'s testimony "is probative of the reasons for the victim's significant delay in reporting the alleged sexual assaults—*i.e.*, the evidence tends to show that her experiences with the appellant, including those assaults on family members, caused her to fear making a prompt report." Commonwealth's Brief at 9 (citing ***Dillon***, 925 A.2d at 139). The Commonwealth further argues that the evidence is relevant under the *res gestae* exception to complete the story of a sexual assault. Commonwealth's Brief at 9 (citing ***Dillon***, 925 A.2d at 139).

If we were to address this issue, we would conclude that there was no abuse of discretion on the part of the trial court. Indeed, the instant case is controlled by ***Dillon***, wherein our Supreme Court found that the introduction of evidence of the appellant's physical abuse of the victim's mother and brother was relevant for purposes other than to show the appellant's bad character. ***Dillon***, 925 A.2d at 139. In this case, L.R. testified that Appellant threatened to kill her if she told anyone about the rape, and she did not tell anyone because she was afraid Appellant would kill her. N.T., 7/9/19, at 34, 37. Pursuant to ***Dillon***, the evidence that Appellant had physically abused L.R.'s mother tended to show that L.R.'s interactions with Appellant caused her to fear making a prompt report. ***Dillon***, 925 A.2d at 139. The Court in ***Dillon*** further noted that revealing the reason for the delay in reporting

allowed the factfinder to better assess the victim's credibility. *Id*. *See also Commonwealth v. Gonzalez*, 112 A.3d 1232, 1237-1238 (Pa. Super. 2015) (applying *Dillon* and finding that the trial court did not abuse its discretion by permitting testimony from victim and her sister regarding the appellant's physical abuse of their mother  to explain the delay in reporting sexual abuse). The Court also noted that the Commonwealth need not wait until the defense raises the issue of a delay in reporting before introducing evidence of an appellant's behavior.[3] *Dylan*, 925 A.2d at 140.  Appellant fails to address *Dillon* in his brief before this Court, and we find *Dillon* controlling.  The trial court did not err in allowing evidence of Appellant's physical abuse of L.R.'s mother, and Appellant is due no relief on these grounds.

Appellant next argues that the trial court erred when it granted the Commonwealth's Motion *in Limine* to Exclude Evidence of Allegations of Abuse by Third Parties.  Appellant's Brief at 27.  Specifically, Appellant avers that the trial court abused its discretion when it excluded evidence that L.R. was removed from her mother's home by DHS because she was physically abused by her mother.  *Id*.  As discussed *supra*, we will reverse the trial court if it is shown that the trial court abused its discretion.  *Danzey*, 210 A.3d at 337.  In support of this argument, Appellant relies on Pennsylvania Rule of Evidence 401, which states in relevant part:

---

[3]  In this case, Appellant's counsel raised the delay in L.R.'s disclosure of the sexual assault as an issue during his opening statement.  N.T., 7/9/19, at 19, 21.

- 8 -

Evidence is relevant if:

(a)    It has any tendency to make a fact more or less probable than it would be without the evidence; and

(b)    The fact is of consequence in determining the action.

Pa.R.E. 401(a) and (b).  Although Appellant claims that the evidence that L.R. was removed from her mother's home from DHS due to physical abuse by her mother is relevant, he fails to set forth how the evidence is relevant to the charges brought against him.  Appellant makes no effort to connect the alleged abuse by L.R.'s mother to the crimes for which he was convicted.  Indeed, Appellant fails to set forth which fact is more or less probable by the inclusion of the evidence that L.R.'s mother was physically abusive toward her.  "Where an appellate brief fails to provide discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." ***Commonwealth v. Rahman***, 75 A.3d 497, 504 (Pa. Super. 2013).  It is not the role of this Court to formulate Appellant's arguments for him. ***Commonwealth v. Donoughe***, __A.3d__, 2020 PA Super 288, at *4 (Pa. Super. filed December 18, 2020).  For this reason, we find the issue waived.

Finally, in support of his third issue, Appellant argues that the trial court erred when it denied his Petition for Dismissal of Case Pursuant to Rule 600(A).  Appellant's Brief at 29. Pennsylvania Rule of Criminal Procedure 600 states in relevant part:

**(A) Commencement of Trial; Time for Trial**

(1) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere*.

(2) Trial shall commence within the following time periods.

> (a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

* * *

**(C) Computation of Time**

(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

(2) For purposes of paragraph (B), only periods of delay caused by the defendant shall be excluded from the computation of the length of time of any pretrial incarceration. Any other periods of delay shall be included in the computation.

* * *

Pa.R.Crim.P. 600(A)(1), (2) and (C)(1), (2).  Our standard of review is well established.

> We review an order denying a Rule 600 motion to dismiss for an abuse of discretion, considering only the evidence of record at the Rule 600 hearing, and the trial court's factual findings.  Further, an appellate court must view the facts in the light most favorable to the prevailing party, which, in this case, is the Commonwealth.

*Commonwealth v. Dixon*, 140 A.3d 718, 723 (Pa. Super. 2016) (citation omitted).

When deciding whether there has been a violation of Rule 600, the reviewing court must determine whether the delay was caused by the

- 10 -

Commonwealth and whether the Commonwealth failed to exercise due diligence. Pa.R.Crim.P. 600, cmt. The court must further determine what time was excludable and/or excusable. "Per the associated computational guidance, periods of delay at any stage of the proceedings caused by the Commonwealth when it has failed to exercise due diligence are to be counted in the 365-day tally." *Commonwealth v. Mills*, 162 A.3d 323, 324 (Pa. 2017). "Any other periods of **delay** shall be excluded from the computation." *Id*. (emphasis in original).

In support of his appeal, Appellant argues that he was not brought to trial within 365 days of the filing of the criminal complaint, which occurred on December 17, 2015. Appellant's Brief at 29. In his brief, Appellant admits that the defense made several "request[s] for further investigation," and sought to have the trial rescheduled because defense counsel was unavailable. *Id*. at 32. Specifically, Appellant argues,

> While there is a considerable amount of excludable time which can be attributed to continuance requests by the defense in this matter, the focus of [defense counsel's] petition that he filed on behalf of [Appellant], is that the first trial date in this matter was scheduled for April 26, 2017 (with a trial readiness conference scheduled for April 24, 2017). As this is the case, the first trial date that this matter was scheduled for was considerably later than 365 days from the date on which the complaint was filed, which was December 17, 2015, even taking excludable time into consideration.

Appellant's Brief at 33.

In this case, the trial court set forth the following discussion of the time between the filing of the criminal complaint and Appellant's trial:

Instantly, the complaint against Appellant was filed on December 17, 2015 and his trial commenced on July 8, 2019. Thus, 1299 days elapsed between the filing of the complaint and the commencement of trial. A review of the record herein indicated that conservatively 983 days were excludable from the Rule 600 calculation. This included the 365 days between April 26, 2016, and April 26, 2017, time taken due to busy court calendars; the 182 days between April 26, 2017, and October 23, 2017, the next trial date; the 2 days between October 23, 2017 and October 25, 2017, for a defense continuance request; the 80 days between October 25, 2017 and February 12, 2018, for a defense continuance request, the 182 days between February 12, 2018 and August 13, 2018, for a defense continuance request; the 7 days between August 13, 2018 and August 20, 2018, for a defense continuance request; the 74 days between August 20, 2018 and November 2, 2018, for a defense continuance request; the 84 days between November 20, 201[8], and March 15, 2019, for a defense continuance request; and, the 7 days for a defense continuance request … between July 1, 2019 and July 8, 2019. Adding up all of this excludable time equals 983 days, which when subtracted from the 1299 days it took to bring [Appellant] to trial brings the total number of days it took to bring Appellant to trial to 316 days. Given this, it is clear that Rule 600 was not violated … .

Trial Court Opinion, 3/2/20, at 12-13.

Pursuant to the trial court's calculations, which this Court has confirmed *via* review of the relevant docket, taking the excludable time into consideration, Appellant was brought to trial within the 365 days required by Pa.R.Crim.P. 600.[4] Appellant does not argue that the trial court erred in its

_____

[4] As noted above, the trial court determined that 983 days of the 1299 days were excludable. Our review and calculation of the relevant dates resulted in a finding that 1042 days were excludable. The trial court listed the time from April 26, 2017, through October 23, 2017, as 182 days, whereas our calculation resulted in the sum of 180 days. The trial court listed the time from October 25, 2017, through February 12, 2018, as eighty days, whereas

- 12 -

determination of excludable time and specifically does not aver that the trial court erred when it determined the time between April 26, 2016, and April 26, 2017, were excludable due to the trial court's busy calendar.[5]  Thus, it is unclear how the trial court allegedly abused its discretion or otherwise erred when it denied Appellant's Rule 600 Motion.  As we have repeatedly held, "This Court will not act as counsel and will not develop arguments on behalf of an appellant."  **Commonwealth v. Kane**, 10 A.3d 327, 331 (Pa. Super. 2010). Appellant is due no relief on these grounds.

Judgment of sentence affirmed.

Judge Strassburger did not participate in the consideration or decision of this case.

_____

our calculation resulted in the sum of 110 days.  The trial court listed the excludable time from November 20, 2018, through March 15, 2019, as eighty-four days, where as our calculation resulted in the sum of 115 days.  Thus, pursuant to this Court's calculation, Appellant was brought to trial within 257 days as opposed to the trial court's calculation of 316 days.  Regardless, Appellant was brought to trial within 365 days as required by Rule 600.

[5]  Periods of delay that are attributable to the judiciary are excludable from calculations under Rule 600.  **Mills**, 162 A.3d at 325.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/16/2021</u>