J-A21011-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KRYSTAL M. WOLFE | : | No. 2317 EDA 2023 |

Appeal from the Order Entered August 18, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000921-2020

BEFORE: KUNSELMAN, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY KUNSELMAN, J.:                **FILED DECEMBER 17, 2024**

The Commonwealth appeals from the order dismissing its case against Krystal Wolfe pursuant to Pennsylvania Rule of Criminal Procedure 600. We determine that the Commonwealth proved that it exercised due diligence when it received previously unknown evidence from an uncooperative witness. We thus vacate the order of dismissal and remand for further proceedings.

Wolfe allegedly attacked Eugene Powell with a machete outside of his apartment on January 14, 2020; police charged her that day with attempted murder and other crimes. On August 9, 2023, Wolfe moved to dismiss pursuant to Rule 600. The Commonwealth opposed dismissal. The trial court held a hearing on Wolfe's motion on August 18, 2023. The trial court recounted the following procedural history based on the record created at the Rule 600 hearing:

The complaint was filed on January 14, 2020. The preliminary hearing took place on January 30, 2020. Formal arraignment took place on February 13, 2020. Discovery was passed on that date, and a pretrial conference was scheduled for March 5, 2020. Following the pretrial conference, the case was listed for a scheduling conference on March 30, 2020. Rule 600 was suspended in the First Judicial District of Pennsylvania due to the COVID-19 pandemic from March 16, 2020 to October 1, 2021, a total of 564 days. 62 days elapsed between the filing of the complaint and the date Rule 600 was suspended.

On October 15, 2021, following multiple continuances due to COVID-19, a status hearing was held before the Honorable Charles Ehrlich. Judge Ehrlich continued the matter for a status hearing on October 22, 2021. [Wolfe] requested a jury trial, and the matter was listed for trial on August 15, 2022 before the Honorable Mia Perez. At a pretrial conference on August 10, 2022, both parties indicated they were ready to proceed to trial, and that there was the possibility of a non-trial disposition. The pretrial conference was rescheduled for August 12, 2022. Eyewitness Syeeda Mumin failed to appear for the August 10th conference. The Commonwealth formally served her with a subpoena for the August 12th date.

On August 12, 2022, [Wolfe] rejected the Commonwealth's offer, and Judge Perez ordered the August 15th trial date to remain. Shortly after the pretrial conference, ADA [Ty] Pittinger spoke with eyewitness Mumin regarding her previous failure to appear in court. During that conversation, eyewitness Mumin told ADA Pittinger that there was a Facebook video of the incident. She sent ADA Pittinger the video, which was one minute and twenty-four seconds long, at approximately 12:30 p.m. that afternoon. At approximately 1:19 p.m., ADA Pittinger sent the video to defense counsel. Following a conversation with defense counsel, ADA Pittinger forwarded the video to Judge Perez so that she would be aware of the situation before the August 15th trial date. On August 15th, Judge Perez informed the Commonwealth that it could proceed to trial with the video excluded or take a continuance with the time attributable to the Commonwealth. The Commonwealth chose to take the continuance, and trial was rescheduled for August 21, 2023. 686 days elapsed between the reinstatement of Rule 600 and the August 18, 2023 motions hearing.

Trial Court Opinion, 10/26/23, at 2–3 (record citations omitted).

The dispute in this case centered on the continuance from August 15, 2022, to August 21, 2023, which was listed on the docket as "All Commonwealth time." Including this delay in the Rule 600 calculation would lead to a Rule 600 violation and require dismissal. The trial court attributed the continuance to the Commonwealth; moreover, the trial court found that the Commonwealth had not been diligent because it had failed to discover the video prior to August 12, 2023. Therefore, the trial court included the lengthy trial delay in its calculation, found a Rule 600 violation, and granted Wolfe's motion to dismiss. The Commonwealth timely appealed. The Commonwealth and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

The Commonwealth argues on appeal that the trial court erred, first by attributing the one-year continuance to the prosecution, and second by finding that the Commonwealth had not exercised due diligence. We will address the second contention, which is dispositive.

This Court reviews Rule 600 issues, including a trial court's finding of the Commonwealth's diligence, for an abuse of discretion. ***Commonwealth v. Hunt***, 858 A.2d 1234, 1238, 1244 (Pa. Super. 2004) (*en banc*). We must consider "the dual purpose" of Rule 600: protecting the speedy trial rights of the accused and protecting society. ***Commonwealth v. Faison***, 297 A.3d 810, 821 (Pa. Super. 2023) (citation omitted). "So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the

- 3 -

fundamental speedy trial rights of an accused, Rule [600] must be construed in a manner consistent with society's right to punish and deter crime." ***Id.***

Under Rule 600, trial in a case like Wolfe's "shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). Applicable to that provision, "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1). Under this rule, time does not count against the Commonwealth if the Commonwealth acts with "due diligence." ***See generally Commonwealth v. Johnson***, 289 A.3d 959, 982 (Pa. 2023).

"Due diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." ***Commonwealth v. Selenski***, 994 A.2d 1083, 1089 (Pa. 2010) (citing ***Commonwealth v. Hill***, 736 A.2d 578, 588 (Pa. 1999)). The Commonwealth's diligence obligation encompasses both investigating the case and providing discovery materials to the defense. ***See, e.g.***, ***Commonwealth v. Womack***, 315 A.3d 1229, 1240 (Pa. 2024); ***Commonwealth v. Preston***, 904 A.2d 1, 12 (Pa. Super. 2006).

We have found that the Commonwealth failed to exercise diligence in obtaining surveillance footage when it was aware that such video might exist. ***Commonwealth v. Ramos***, 237 A.3d 478 (Table), 2020 WL 2617058, at *4

(Pa. Super. 2020) (non-precedential decision).  In **Ramos**, an officer assigned to investigate an indecent assault behind a convenience store contacted the store five days after the incident to determine if surveillance video existed. **Id.**  However, despite repeated defense requests for the video, the prosecutor offered no evidence of asking the officer about the status of his inquiry.  **Id.**  Over one year later, on the day of trial, the assigned detective produced 30 hours of DVD footage.  **Id.**  We held that the resulting defense request for a continuance to review the video was "a direct result of the Commonwealth's lack of due diligence in obtaining the evidence and providing it to the defense," which therefore should have been included in the Rule 600 calculation.  **Id.**

Here, by contrast, the Commonwealth acted reasonably in discovering the previously unknown video.  The trial court faulted the prosecution for asking only five questions of the eyewitness in her interview on the day of the incident, and for minimal contact with her in the ensuing months.  Trial Court Opinion, 10/26/23, at 4.  Neither the police nor the prosecutor asked the eyewitness "if she was aware of any video of the incident," which could have led to earlier discovery of the recording.  **Id.**  However, this additional questioning arises only from the hindsight of knowing that the video existed.  Unlike the convenience store footage in **Ramos**, there was no reason to expect that the eyewitness had taken a video of the incident in a residential area.  Therefore, the Commonwealth's investigative efforts were diligent.

Moreover, the Commonwealth exercised due diligence in acquiring the video and promptly providing it to Wolfe.  After the eyewitness failed to appear

on August 10, 2022, the Commonwealth formally served her with a subpoena to attend the pretrial conference two days later. *Cf. Commonwealth v. Dixon*, 140 A.3d 718, 726 (Pa. Super. 2016) (finding diligence where the prosecutor "issued subpoenas directing [the complainant] to appear in court, and when he did not do so, the prosecutor sent detectives to bring him in"). Following the pretrial conference, the eyewitness mentioned the video in an apparent effort to avoid her court obligation. The assistant district attorney promptly obtained the 84-second video and passed it on to Wolfe, still three days before the scheduled trial date. Unlike the trial-day surprise of 30 hours of footage in *Ramos*, the Commonwealth's actions here provided ample time for Wolfe to review the newly discovered video. The Commonwealth accepted the only option Judge Perez gave that would allow it to use the video at trial: a continuance. Although the continuance is listed as "Commonwealth time," it is excluded from the Rule 600 computation if the Commonwealth exercised due diligence, which the Commonwealth established.

In sum, the Commonwealth's efforts to discover a Facebook video and provide it to the defense were reasonable. The trial court abused its discretion by punishing the prosecution for failing to ask an uncooperative witness about video where there was no reason to suspect a video existed. The Commonwealth's acceptance of Judge Perez's offer to continue the case, rather than exclude the video from evidence, was a reasonable strategy to prosecute its case, not misconduct to evade Wolfe's speedy trial rights. *Faison*, 297 A.3d at 821. Based on the facts of this case, we conclude that

- 6 -

the Commonwealth exercised due diligence at all relevant times. ***Selenski***, 994 A.2d at 1089. Because the Commonwealth was diligent, the trial delay is not included in the time calculation; thus, there was no Rule 600 violation. Pa.R.Crim.P. 600(A)(2)(a), (C)(1). We therefore reverse the trial court's order granting Wolfe's motion to dismiss pursuant to Rule 600 and remand for further proceedings.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date:  12/17/2024